**JOHN HANCOCK MUT. LIFE INS. CO. v. SALLY.**

No. 14399.

Court of Civil Appeals of Texas. Fort Worth.

June 19, 1942.

Rehearing Denied July 10, 1942.

Thompson & Barwise and Fred Korth, all of Fort Worth, for appellant.

Frank R. Graves, of Fort Worth, for appellee.

McDONALD, Chief Justice.

Sylvia Sally brought this suit to recover the proceeds of two life insurance policies. Plaintiff claimed that she was the surviving widow of the insured, that the beneficiary named in the policy as the wife of the insured was not his lawful wife, and that the payment theretofore made to the named beneficiary was wrongful.

There appears to us to be a fundamental error apparent upon the face of the record which requires a reversal of the

judgment rendered in favor of plaintiff in the court below.

In her petition plaintiff describes herself as the surviving widow of the insured. She does not allege that the insured died intestate, she does not allege that there has been no administration and no necessity for such, nor does she allege that she is the sole heir of the deceased.

■■ If the named beneficiary had no insurable interest in the life of the insured, the proceeds of the policy became payable to the estate of the deceased. 24 Tex.Jur. 770, and cases there cited. The general rule is that suit on causes of action relating to the estate of a decedent must be prosecuted by the personal representative, not by the heirs, devisees or legatees. 14 Tex.Jur. 298. In 14 Tex.Jur. 299, will be found listed the exceptional cases in which the heir may bring suit. In the case before us the plaintiff's pleadings are insufficient to bring the case within such exceptions. Another discussion of the same subject will be found in 15 Tex.Jur. 184, et seq. See also the cases of American Nat. Ins. Co. v. Wallace, Tex. Civ.App., 210 S.W. 859; Bradley v. American Nat. Ins. Co., Tex.Civ.App., 44 S.W.2d 478; Finn v. Metropolitan Life Ins. Co., Tex.Civ.App., 16 S.W.2d 922, same case styled Wilke v. Finn, Tex.Com.App., 39 S.W.2d 836; Maryland Casualty Co. v. McGill, Tex.Civ.App., 69 S.W.2d 158; John Hancock Mut. Life Ins. Co. v. Warren, Tex. Civ.App., 72 S.W.2d 347.

■ With the record in this condition, we do not consider it proper to pass upon contentions made by the defendant to the effect that judgment should be rendered in its favor. If the plaintiff is not the proper party to prosecute the suit, a judgment in favor of defendant would not cut off the rights, if any, of the personal representative or of other heirs, as the case might be. See the two cases last above cited.

If the plaintiff is entitled to maintain the suit under the exceptions above referred to, she may have opportunity to offer proper pleadings and proof thereof upon another trial.

The judgment of the trial court is reversed, and the cause is remanded for another trial not inconsistent with the holdings herein announced.

### On Motion for Rehearing.

Both parties to the appeal have filed motions for rehearing, in which they appear to concede that the cause must be remanded for the reasons shown in our original opinion, but in which they urge us to express opinions upon the merits of the case, for the guidance of the parties and the court below upon another trial.

Appellant's brief does not contain a statement of the points relied upon for reversal, as is required by Rule 418, but it contains "Propositions" which, for the purposes of this opinion, we will treat as points. We also observe that neither of the briefs contains the type of index required by Rule 421. We wish to urge that counsel in all cases comply with this rule.

■ Smith Sallie was married to the plaintiff in 1920. For some reason plaintiff chooses to spell her married surname "Sally". The record before us indicates that they were never divorced. Plaintiff later married another negro. It is stipulated, by a written agreement filed in the cause, that: "Smith Sallie and Louvinia Sallie began living together as man and wife under an agreement on or about March 12, 1929, and continued to live together and cohabit as man and wife until the death of the said Smith Sallie on December 10, 1940; that during said period the said Smith Sallie and Louvinie Sallie held themselves out to the world to be man and wife and were recognized as such by their neighbors and friends. That during said period of time above referred to, the said Smith Sallie supported the said Louvinie Sallie and as his wife she received pecuniary benefit from said relationship."

The testimony shows that Louvinie had theretofore been married to a negro named John Cash. The record does not show whether she and Cash were ever divorced.

The findings of the jury were, in effect, that Louvinie did not in good faith believe that Smith Sallie and the plaintiff had been divorced, or that Louvinie and John Cash had been divorced. It is not necessary here to pass upon the effect of the above quoted stipulation, or the sufficiency of the evidence to support the findings of the jury. The evidence may not be the same upon another trial. It is enough to say here that if the jury upon another trial should find, upon sufficient evidence, facts which would constitute a lawful or putative marriage relationship on the part of Louvinie, then it would follow that she had an insurable interest in the life of Smith Sallie. We regard the holding of the Commission of Ap-

peals in Mendez v. Mendez, 277 S.W. 1055, as conclusive upon this question. In its motion for rehearing appellant cites the recent decision of our Supreme Court in Drane v. Jefferson Standard Life Ins. Co., 161 S.W. 2d 1057, in which a person not related at all to the deceased, but who had been receiving support from the deceased, was held to have an insurable interest. Since the evidence may not be the same upon another trial, we should prefer not to attempt to apply the holdings in the Drane case to the evidence and the findings of the jury shown in the record now before us.

■■ Appellant asserts that it has a complete defense to plaintiff's suit under Art. 4736a, Vern.Ann.Civ.St., which provides as follows:

"Sec. 1. Whenever any person shall procure the issuance of a policy of insurance on his or her life in any legal reserve life insurance company, and designate in writing filed with the company the beneficiary to receive the proceeds thereof, the company issuing such policy shall, in the absence of the receipt by it of notice of an adverse claim to the proceeds of the policy from one having a bona fide legal claim to such proceeds or a part thereof, pay such proceeds becoming due on the death of the insured to the person so designated as beneficiary, and such payment so made, in the absence of such notice received by the insurance company prior to the date of the payment of the proceeds, shall discharge the company from all liability under the policy.

"Sec. 2. The provisions of this Act shall apply to all policies now in existence as well as to all policies hereafter written."

No issues were submitted to the jury upon this question. Appellant raises the question here under his assignment to the effect that his motion for instructed verdict should have been granted. It appears from the evidence that a check for $1,100, the amount payable after deduction of $400 which had been assigned to the undertaker, and concerning which no dispute exists, was sent by appellant to one Claude Maer, a local agent of appellant in Fort Worth. On Saturday, December 28, 1940, Maer delivered the check to Universal Mills, in Fort Worth, by whom the insured was employed at the time of his death. The insurance in question was what is generally known as group insurance, covering Smith Sallie as an employee of this concern. Mr. Martin,

secretary and treasurer of Universal Mills, took the check to Louvinie during the morning of the same Saturday, obtained her endorsement thereon, and then gave to Louvinie a check drawn by Universal Mills on a Fort Worth bank for $1,050. The difference of $50 between the amounts of the two checks was occasioned by the fact that Louvinie had borrowed $50 from Universal Mills, and in this manner repayment of the $50 was made. Louvinie went to the bank on Saturday to cash the check, found the bank closed, and went again to the bank on Monday following, at which time the bank gave her its cashier's check in exchange for the check for $1,050 drawn by Universal Mills. At either five or seven-thirty o'clock in the afternoon of the Saturday mentioned, the testimony being disputed on the point, the plaintiff called Mr. Maer on the telephone, telling him that she was the lawful wife of Smith Sallie and that she was entitled to the insurance money. Mr. Maer told her that the money had already been paid to Louvinie. On the next day, Sunday, Louvinie got in touch with Mr. Graves, the attorney who represents her in the case. Mr. Graves was not able to get in touch with Mr. Maer on Sunday, but early Monday morning Mr. Graves talked with both Mr. Maer and Mr. Martin, endeavoring to get payment stopped on the two checks in question. Mr. Maer advised that he had no authority to stop payment on checks, but said that he would report the matter to the general agent of appellant in Dallas, and later reported that he had done so. Mr. Martin refused to stop payment on the Universal Mills check. The evidence indicates that these various conversations took place before Louvinie cashed the check at the bank. When Louvinie appeared at the drawee bank, the latter called Mr. Martin on the telephone concerning Louvinie's identity, and was told by Mr. Martin that Louvinie was the payee in the check.

We believe that the testimony before us shows that a payment of the proceeds of the policy was made to Louvinie before appellant had any notice of plaintiff's claim. Appellant's check had passed into the hands of Universal Mills, a third party who is not shown to have had any connection with the insurance claim, further than that Mr. Martin made the manual delivery of the check to Louvinie, and at the time collected the $50 debt owing by Louvinie to Universal Mills. It is our opinion that

Universal Mills, as holder of the check in due course, could have maintained suit on it against appellant. Texas Sporting Goods Co. v. Texas Gulf Sulphur Co., Tex.Civ. App., 81 S.W.2d 805. We are not able to see any obligation resting upon Universal Mills to become involved in the controversy by stopping payment on the check it had given to Louvinie. It had acquired the check issued by the insurance company without any notice of any infirmities in it, and it had the right to proceed with the collection of it without becoming involved in this controversy relating to the more or less uncertain domestic status of these negroes who were, to put it mildly, somewhat negligent in determining for themselves their marital status as they proceeded from one domestic situation to another.

Both motions for rehearing are overruled.