Kenneth STILLWAGONER, et al., Appellants.

v.

The TRAVELERS INSURANCE COMPANY, et al., Appellees.

No. 12–97–00173–CV.

Court of Appeals of Texas, Tyler.

Aug. 31, 1998.

Rehearings Overruled Sept. 21, 1998, Oct. 30, 1998.

Scott Monroe Clearman, Michael D. Myers, Houston, for appellant.

Carl D. Bryan, Sulphur Springs, James K. Peden, III, Dallas, for appellees.

Before HOLCOMB and HADDEN, JJ., and BILL BASS, Retired Justice, Tyler, 12th Court of Appeals, sitting by assignment.

BILL BASS, Justice (Retired).

The original opinion heretofore entered on July 31, 1998 is set aside and the same is hereby withdrawn and the following original opinion is entered in lieu thereof, to wit: This is a suit to determine who is entitled to the proceeds of an accidental death policy. The decedent's employer procured a policy upon the lives of its employees without their knowledge, and named itself the beneficiary. The case presents the question of whether the employer had an insurable interest in the life of the decedent, and who is entitled to raise the issue of lack of insurable interest. Decedents surviving spouse and children contend that Travelers should have paid the $200,000 death benefit to the decedent's estate, because her employer, Advantage Medical Services, Inc., had no insurable interest in the decedent's life. Travelers insists that the beneficiary's lack of an insurable interest is an issue that can only be raised by the insurance company, and that, in any event, the proceeds were properly paid to the employer because the employer had an insurable interest in the life of its employee. This appeal is from a summary judgment in favor of Travelers Insurance Company, the employer, Advantage Medical Services, Inc., and its sole stockholder, Ronald Lummus. We reverse and remand the cause to the trial court.

Peggy Stillwagoner was a registered nurse who had worked over twenty-five years in the Sulphur Springs area for various employ-

ers. At the time of her death she had been employed by Advantage for several months on a temporary basis as a field nurse. A field nurse was required to travel to the homes of Advantage's clients to provide nursing services. Peggy was not an officer, director or stockholder of Advantage. She died in October 1994 from injuries received when her company owned Geo Metro collided with another vehicle.

Advantage provides in-home health care including nursing. The company had only four or five employees. Its president, Ron Lummus was its sole stockholder. Advantage was not a subscriber to the workers' compensation system. In April 1992, Advantage purchased an accidental death, dismemberment and total disability policy from Travelers covering all of its employees, including secretaries, nurses and its president, Ron Lummus. The policy provided that Travelers would pay the benefit upon the on-the-job accidental death, dismemberment or total disability of an "insured person" (full-time employee). The policy provision requiring benefits under the policy to be paid to the insured persons or their beneficiaries and giving the insured person the right to change beneficiaries had been amended by rider to provide that all benefits under the policy should be payable to the policy holder (Advantage) and deleting the insured person's right to change the beneficiary.

The summary judgment record shows that Peggy's husband knew nothing about the policy. A few days after the funeral Peggy's husband Kenneth and one of her sons went to see Lummus to ask if there was any insurance covering her life. Lummus "tearfully" denied the existence of any insurance covering Peggy. In his deposition Lummus conceded that he bought the insurance for the benefit of the company, and that he intended that any benefits paid under the policy to be used for its "ongoing" operation.

After Peggy's death, Travelers refused to pay the $200,000 death benefit to Advantage claiming that her death occurred outside the scope of her employment. Advantage brought suit and Travelers settled the litigation for $190,000. No money was paid to the Stillwagoners or to Peggy's estate.

Kenneth Stillwagoner, individually and as representative of Peggy's estate, sued Advantage and Lummus to recover damages resulting from Advantage's failure to fulfill its promises of life insurance and other benefits equal to those offered by her former employer, which had induced her to leave her former employer to work for Advantage. Later Peggy's three sons joined as Plaintiffs. The petition was amended to add Travelers as a defendant and to include a claim for the benefits of the insurance policy. The Stillwagoners moved for partial summary judgment on their claim for the insurance proceeds on the grounds that Advantage had no insurable interest in Peggy Stillwagoner's life, and alternatively, that TEX.INS.CODE ANN. art. 3.51–6 § 3 required the payment of the benefits to Peggy's estate.

Travelers, Advantage and Lummus argued that the Stillwagoners were not entitled to partial summary judgment, because (1) Advantage did have an insurable interest in Peggy's life; (2) there was no proof that the Stillwagoners were the proper representatives of Peggy's estate; and (3) there remained a fact issue as to whether benefits were payable to anyone under the policy. (Travelers had not admitted liability when it settled with Advantage). Advantage, Lummus and Travelers also moved for summary judgment on the ground that Advantage possessed an insurable interest in Peggy's life, because Peggy had had the opportunity to attract or create new business for Advantage and was therefore a valuable employee. Advantage, Lummus and Travelers also argued that the possibility of loss through litigation resulting from the death of an employee created an insurable interest. The trial court granted Advantage's, Lummus' and Travelers' motions for summary judgment and denied the Stillwagoner's motion.

In their point of error, the Stillwagoners contend that the trial court erred in granting the Appellees' motions for summary judgment and in denying their motion for partial summary judgment, because they, not Advantage, had an insurable interest in Peggy's life, and because TEX.INS.CODE ANN. art 3.51–6 § 3 required payment to Peggy's estate.

Shortly before the American Revolution, the Statute 14 George III, ch. 48 § 1 provided that no insurance should be made on a life in which the beneficiary had no interest. The earliest Texas decisions recognized the requirement that the persons for whom the policy was issued must have an insurable interest in the life of the person insured. *See, e.g., Price v. Supreme Lodge of the Knights of Honor,* 68 Tex. 361, 4 S.W. 633, 634 (1887); *Goldbaum v. Blum,* 79 Tex. 638, 15 S.W. 564, 565 (1891). In *Cheeves v. Anders,* 87 Tex. 287, 28 S.W. 274, 275 (1894), our Supreme Court said that "[i]t is against the public policy of this state to allow any one who has no insurable interest in the life insured to be the owner of a policy of insurance." The court also explained the basis underlying the rule:

> Our court has placed the inhibition against such contracts upon the ... sounder ground that the public, independent of the consent or concurrence of the parties, has an interest that no inducement shall be offered to one man to take the life of another.

*Cheeves,* 28 S.W. at 275. This rationale cannot be dismissed as fanciful. *See, e.g., Black v. State,* 137 Tex.Cr.R. 173, 128 S.W.2d 406 (1939). Many decisions in other jurisdictions as well as some Texas cases characterize life insurance policies for the benefit of one not having an insurable interest in the life insured as wagering contracts and condemn them on this ground. *See, e.g., Wilke v. Finn,* 39 S.W.2d 836, 838 (Tex.Comm'n App .1931, holding approved); *Goldbaum v. Blum,* 79 Tex. 638, 15 S.W. 564, 565 (1891). However, although the Texas rule requires the designated beneficiary to have an insurable interest, it is not essential to the validity of the contract, and the *insurance company* may not raise the beneficiary's lack of an insurable interest as a defense. K.A. Druchsler, *Annotation, Life Insurance: right to raise question of lack of insurable interest,* 175 A.L.R. 1276, 1278 (1948); *Pacific Mutual Life Insurance Co. of California, v. Williams,* 79 Tex. 633, 15 S.W. 478, 480 (1891); *Cheeves v. Anders,* 28 S.W. at 276. If insurance benefits are paid to a beneficiary without an insurable interest, the beneficiary holds the proceeds for the benefit of those entitled by law to receive them. *Id.,* 28 S.W. at 275; *Smith v. Metropolitan Life Ins. Co.,* 123 S.W.2d 956, 957 (Tex.Civ.App.—Amarillo 1938); *Wilke v. Finn,* 39 S.W.2d 836 (Tex. Comm'n App.1931, opinion adopted); *John Hancock Mutual Life Ins. Co. v. Sally,* 163 S.W.2d 651 (Tex.Civ.App.—Fort Worth 1942, no writ). If the insurance company with knowledge of the estate's adverse claim and the reasons therefore pays proceeds benefits to a beneficiary without an insurable interest this can afford no defense to the action by the estate of the insured for the entire amount due on the policies. *Manhattan Life Ins. Co. v. Cohen,* 139 S.W. 51 (Tex.Civ. App.—San Antonio 1911, writ ref'd).

The legislature has, on several occasions, enlarged the class of persons considered to have an insurable interest. In 1921, the legislature provided that to enable corporations to protect themselves in the event of the death of a valuable executive, under certain limited circumstances, corporations would have an insurable interest in the lives of their valuable officers and stockholders. Act of March 12, 1921, 37th Leg., R.S., ch. 84, 1921 Tex.Gen.Laws 165 (amended 1951 now Tex.Ins.Code art. 3.49 (Vernon 1981)). The act did not grant a corporation an insurable interest in all its officers and stockholders, but only those of "extensive experience and skill on whom the corporation depended for its continued success ." *See McBride v. Clayton,* 140 Tex. 71, 76, 166 S.W.2d 125, 128 (Tex.1942). A 1931 amendment authorized members of fraternal benefit societies, with the societies consent, to name anyone as a beneficiary of a death benefit certificate. Acts of 1931, 42 Leg., R .S., ch. 48 p. 71. The legislature conferred an insurable interest on those persons named by an insured as beneficiaries in a policy on his own life. Acts of 1953, 53rd Leg., R.S., ch 113 p. 400.

Although the class of persons and entities having an insurable interest has been expanded, the insurable interest requirement has not been abrogated, and the rule is still strictly followed by the courts of this state. *Empire Life Ins. Co. of America v. Moody,* 584 S.W.2d 855 (Tex.1979); *United Benefit Life Ins. Co. of Omaha v. Boyd,* 453 S.W.2d

332 (Tex.Civ.App.—El Paso 1970, writ ref'd n.r.e.).

Advantage purchased the policy and named itself as beneficiary. But if the issue may be raised by the representatives of Peggy's estate, in order to prevail against the estate, Advantage must prove an insurable interest in Peggy's life under Texas law.

### CAN PEGGY'S ESTATE RAISE THE ISSUE OF ADVANTAGE'S LACK OF AN INSURABLE INTEREST IN PEGGY'S LIFE?

■ Appellees argued before the trial court that "[i]t is well settled that *only* the insurer can raise the [beneficiary's] lack of insurable interest," citing 3 COUCH ON INSURANCE 3D, § 41.5 (1996), which states: "[T]he majority of courts which have considered the issue hold that only the insurer can raise the objection of want of insurable interest."

■ On appeal, they concede that Texas followed the minority rule allowing any interested party other than the insurer to raise the issue. But now Appellees argue that the Texas rule is no longer operative since the legislature granted an insurable interest to a beneficiary named by the insured because the legislation "eliminated the issue of whether such a beneficiary had an insurable interest." But in the instant case, the insured did not name the beneficiary. Advantage named itself. The argument also ignores the fact that a person or entity may still purchase insurance on the life of another and designate itself as beneficiary. But an insurable interest is still required. Persons other than the insured may still purchase insurance on the insured's life and name themselves the beneficiary of the policy. Creditors can and often do designate themselves the beneficiary of a policy purchased by them on the life of their debtor. But whatever might be the face amount of the policy, the creditor's insurable interest is limited to the loan balance at the insureds death, the rest of the policy proceeds belonging to the insured's estate. *American Casualty & Life Co. v. Chambers,* 172 S.W.2d 122 (Tex.Civ.App.—1943, writ dism'd w.o.j.); *Empire Life Ins. Co. v. Moody,* 584 S.W.2d 855 (Tex.1979). Corporations name themselves beneficiaries of policies they buy on the lives of their important officers, directors and stockholders. But that insurable interest does not survive the relationship that created it, and if the relationship has been terminated or the business entity no longer exists, the proceeds go to the insured's estate. *McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125 (Tex.1942). Appellees acknowledge that no Texas cases follow the rule they urge upon this Court, but they contend that we should disregard *Empire Life Insurance Company of America v. Moody,* 584 S.W.2d 855 (Tex.1979); *North River Ins. Co. New York v. Fisher,* 481 S.W.2d 443 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.), and other cases decided since 1953 which allowed parties other than the insurer to challenge the beneficiary's insurable interest, because they argue, it does not appear "that the issue of standing was raised."

The reason the issue of standing to challenge the beneficiary's insurable interest was not raised in those cases was because standing was obvious. The 1953 grant of an insurable interest to another class of persons did not abrogate the insurable interest requirement, nor did it undermine the logic underlying the Texas rule recognizing the right of parties other than the insurer to challenge the beneficiary's insurable interest. *United Benefit Life Ins. Co. of Omaha v. Boyd,* 457 S.W.2d 893 (Tex.1970) approving the Amarillo Court of Appeals opinion 453 S.W.2d 332. In the 1894 case of *Cheeves v. Anders,* 87 Tex. 287, 28 S.W. 274 (1894), our Supreme Court reiterated the already established Texas rule and clearly and simply explained the rationale supporting it, as follows:

When an insurance company has issued a policy upon the life of a person, payable to one who has no insurable interest in the life insured, ... the insurance company must nevertheless pay the full amount of the policy, if otherwise liable, because it has so contracted; and it is no concern of the insurer as to who gets the proceeds, except to see that it is paid to the proper parties, under its agreement. It is simply required to perform its contract, and the law will dispose of the money according to the rights of the parties *[Pacific Mutual Life] Insurance Co. of California v.*

*Williams,* 79 Tex. 633, 637, 15 S.W. 478, and authorities cited. This rule does no wrong to the insurance company. It, having agreed to pay the money upon the death of a named person, ought not to be permitted to avoid liability upon its contract upon the ground that it has made an unlawful agreement, when that contract can be enforced in favor of a person who is in no wise concerned in the unlawful part of the transaction.

. . .

(W)hy should it be said that the policy issued by the company contrary to law should be held void as to it? The reason would seem to be equally strong to enforce the contract in favor of one who was entirely innocent of participation, as in favor of him who voluntarily places the insurance in the name of one who cannot lawfully receive it. If the insurance company may set up the illegality of such a contract, then the object of the law will be frustrated, and the making of such unlawful agreements by insurance companies will be encouraged, for they would thus be enabled to reap the benefit without incurring the risk of such business. If the insurer is held liable, and the payee in the policy is denied its benefits when unlawfully obtained, both parties to the unlawful contract will be denied relief, and the beneficial objects of insurance upon the life be attained, by giving the benefits to the estate of the insured, and no inducement will be offered to destroy the life upon which the risk is placed.

The insurable interest requirement for beneficiaries of life insurance rests on two coexisting policy considerations: (1) that no inducement be offered to one person to take the life of another; and (2) that no one should be permitted to wager on the continuation of a human life. A rule that limits the right to raise the issue to the insurance carrier suggests that the basis for the insurable interest requirement in life insurance policies is the protection of insurance companies. But the rationale reiterated in our case law for over a hundred years tells us that the rule was not devised as a shield for insurance companies but for the protection of human life.

The Texas rule allowing an interested party to raise the issue rests upon a sounder basis and provides a more practical means for the enforcement of the insurable interest requirement. The contrary rule not only encourages the carrier to disregard the insurable interest requirement in the writing of life insurance policies, but leaves those who are legally entitled to the proceeds (normally the insured's estate) with no means of enforcing their claim to the proceeds when the named beneficiary has no insurable interest.

An insurable interest is an essential characteristic of probably all insurance contracts, whatever the subject matter. But it is necessary to distinguish between property insurance and life insurance in defining what constitutes an insurable interest. 43 Am.Jur.2d *Insurance* § 938 (1982). Property insurance rests upon a different basis than life insurance. Property insurance is based on the principle of indemnity. If the insured has no insurable interest, the policy is invalid, there is no loss under the policy, and no recovery by the insured. However, in Texas, the beneficiary's lack of an insurable interest does not invalidate a life insurance policy. The failure to recognize this distinction has sometimes confused the definition of insurable interest as well as how the issue may be raised. The rule advocated by Appellees is perhaps appropriate in a property insurance context, and the only Texas case cited by Appellees in which the carrier sought to raise the rule was a property case (theft insurance). *Commonwealth Insurance Company of New York v. Lacy,* 214 S.W.2d 899, 900 (Tex.Civ.App.—Texarkana 1948, writ ref'd n.r.e.). Contrary to the Texas rule applicable to life insurance, the decisions in Texas *property* insurance cases have always assumed the carrier's right to challenge the insured's insurable interest in *property. See, e.g., Springfield Fire & Marine v. Boon,* 194 S.W. 1006 (Tex.Civ.App.—Texarkana 1917, writ ref'd). Peggy's estate is not barred from raising the issue of Advantage's lack of an insurable interest in Peggy's life.

## DID ADVANTAGE HAVE AN INSURABLE INTEREST IN PEGGY'S LIFE?

■ Appellees argue that even if Advantage must possess an insurable interest in Peggy's life and even if Peggy's estate may raise the issue they must still prevail because Advantage had an insurable interest in Peggy's life because she was a valued income producing company employee and her death, under circumstances which would trigger benefits under the policy, could expose the company to a substantial financial loss. Appellees argue that Advantage, as a non-subscriber to the Texas Workers' Compensation System, was motivated to purchase the insurance in order to provide funds to "defend and resolve any negligence suits" brought by employees' families because of an employee's job related accidental death.

The opinion in *Drane v. Jefferson Standard Life Ins. Co.,* 139 Tex. 101, 161 S.W.2d 1057 (1942) sets out the most cited Texas definition of an insurable interest in another's life:

> To prove an insurable interest in the life of another, the putative beneficiary must fall into one of three general classes: (1) one so closely related by blood or affinity that he wants the other to continue to live, irrespective of the monetary considerations; (2) a creditor; and (3) one having a reasonable expectation of pecuniary benefit or advantage from the continued life of another.

*Drane,* 161 S.W.2d at 1058–1059. The court plainly and simply explained the third class in language difficult to misunderstand, as follows:

> Bluntly expressed, insurable interest under (the third) classification, is determined by monetary considerations, viewed from the standpoint of the beneficiary. Would he regard himself as better off from the standpoint of money, would he enjoy more substantial economic returns should the insured continue to live; or would he have more, in the form of the proceeds of the policy; should she die?

*Id.* Appellees contend that Advantage falls within the third category, although Advantage had only hired Peggy as a temporary employee two months before her death.

Nevertheless, they insist that she was a very competent nurse, well known in the community, who might have attracted additional home health care business for her employer had she lived and continued working for Advantage.

■ The mere existence of an employer/employee relationship is never sufficient to give the employer an insurable interest in the life of the employee. Before 1921, the courts of Texas uniformly held that a corporation did not even have an insurable interest in its important officers or shareholders. In response to these decisions and no doubt under corporate pressure to conform Texas law to that of nearly all other jurisdictions, in 1921 the legislature expanded the Texas definition to extend to corporations an insurable interest in the lives of their important officers and stockholders. The act's emergency clause recited that its purpose was to enable financial institutions "to properly protect themselves in the event of a valuable executive." The legislation did not confer on corporations an insurable interest in the lives of all their officers and stockholders. In *McBride v. Clayton,* 166 S.W.2d at 128–129, our supreme court interpreted the act in the light of the common law of other jurisdictions where a corporation's insurable interest in the lives of its officers and stockholders had been recognized in the absence of statute. The *McBride* court concluded the grant of an insurable interest extended only to the lives of officers and stockholders "to whom the other stockholders looked primarily for the success of the business" or "on whose services the corporation depends for its prosperity, and whose death will be the cause of a substantial loss to it." The court quoted with approval a Pennsylvania case in which the Pennsylvania Supreme Court explained that a corporation's insurable interest extended only to those lives whose death would be the cause of substantial loss, *"but that such would not result from the cessation of ordinary service, but would arise when the success of the business is dependent on the continued life of the employee." United Security Life Ins. & T. Co. v. Brown,* 270 Pa. 270, 113 A. 446 (1921). It must be presumed that the legislature was cognizant of and

acted with reference to the Texas courts' strict interpretation of insurable interest when it conferred on corporations an insurable interest in the lives of their important officers and stockholders but not their employees.

█ Peggy was a temporary employee hired two months before her death. She was replaced the day after her death. Appellees claim that like Advantage's other employees, Peggy would have had the opportunity to produce business through her friendships and professional contacts. However, Appellees did not identify any referrals produced by Peggy or show any diminution in Advantage's business referable to her death. The "referrals" anticipated from the employees personal and business contacts seem no more than what an employer might ordinarily expect from any conscientious employee. In this context, it is worth noting that Advantage insured the lives of all its employees. Even in the absence of evidence we may assume that Peggy's death forced some readjustments which normally accompany the death of an employee. But an insurable interest does not result from the cessation of ordinary service. *McBride,* 166 S.W.2d at 129. Other than the bald assertion that she might have been expected to produce new business for her employer, there is no showing that Advantage's success or failure was dependent upon Peggy.

█ Next, Appellees argue that an insurable interest may arise from the reasonable expectation of a substantial negative economic impact on the beneficiary resulting from the insured's death, citing Couch's treatise.

> ... The employer must have a reasonable expectation of substantial pecuniary gain through the continued life of the employee, or of a substantial pecuniary loss in the case of his or her death in order to sustain a finding of insurable interest. . . .

3 LEE R. RUSS, COUCH ON INSURANCE § 43:13, at 43–16 (3d ed.1997). Appellees contend that Advantage, as a non-subscriber to the Texas workers' compensation system, might require the proceeds of a policy on Peggy's life to defend or settle a negligence suit brought by her heirs in the event of her accidental death on the job. Although Appellees acknowledge that an insurable interest arising from loss or destruction of the thing insured is most common in the property insurance context, they argue that "the foundation and purpose of the insurable interest rule does not support drawing a distinction between the two circumstances [property and life insurance] as a basis for finding insurable interest." But we have already noted that when defining insurable interest a distinction must be made between life insurance and property insurance. The concept of insurable interest as it applies to property insurance rests upon a different basis than when applied to life insurance. *See* 43 AM.JUR.2D *Insurable Interests* § 938. Property insurance is grounded on the principal of indemnity. If the named insured has no insurable interest there can be no loss and no recovery. The policy will indemnify the insured only to the extent of his loss regardless of the face amount of the policy. The amount of loss is limited by the extent of a party's insurable interest and that insurable interest cannot exceed the value of the thing insured. Property policies often provide that losses are payable to a mortgagee "as its interest may appear." However, with the exception of creditors whose insurable interest in their debtors' lives is limited by the amount of the debt, a life insurance beneficiary with an insurable interest in the life of the insured is entitled to receive the full face value of the policy unlimited by any calculation of the pecuniary benefits the beneficiary might have reasonably expected from the continued life of the insured. The spouse of a laborer of the most modest means may legally insure his life for a million dollars (or any amount for which she pays the premium) and collect the full face amount of the policy at his death. But should this same couple insure their house and furniture for twice its value, in the event of a loss, the carrier is legally obligated to indemnify the insureds only for the value of the property lost or destroyed.

Life insurance cases do sometimes state that one has an insurable interest in the life of another when he has a reasonable right to expect some pecuniary advantage from the

continuance of the insured's life or to fear loss from his death. But in the Texas life insurance cases, it is obvious that the "loss" contemplated is the loss at the death of the insured of the expectation of pecuniary benefit or advantage which initially gave rise to the insurable interest. It is but the negative counterpart of the same proposition of which "the reasonable expectation of a substantial pecuniary benefit" is the affirmative component. Appellees interpretation would distort the definition to confer on a potential tortfeasor an insurable interest in the lives of the possible victims of his or her negligence or intentional misconduct, employers in the lives of their employees, doctors in the lives of their patients, landlords in the lives of their tenants, and lawyers in the lives of their clients.

Appellees cite one Kentucky case for the proposition that insurance on an employees life may be used as a substitute for liability or workers compensation insurance, *Amalgamated Labor Life Ins. Co. v. Rowe*, 421 S.W.2d 364 (Ky.1967) which we do not find to be persuasive. It is plain that liability insurance, not life insurance, is the appropriate means of insuring against a potential negligence suit brought by the estate of the deceased or maimed employee. But liability insurance would indemnify Advantage only to the extent of its loss. The Travelers policy paid Advantage $200,000 without regard to whether Advantage suffered any loss at all. Therefore, it stood to gain a great deal from its wager on the life of its employee in the likely event that no claim was brought or if the claim could be settled for less than the policy benefits. Viewed in this light, the policy appears to be a wagering contract on the lives of the persons insured, one of the evils the insurable interest rule was devised to discourage. We conclude Advantage had no insurable interest in Peggy's life.

■ Moreover, this policy is either a group policy or a blanket policy. Whether the policy in question is a group policy or a blanket accident and sickness policy, the payment of proceeds is governed by TEX.INS. CODE ANN. art. 3.51–6 (Vernon 1998). In pertinent part it reads as follows:

PAYMENT OF BENEFITS

Sec. 3 All benefits under any group [TEX.INS.CODE art. 3.51–6 § 1(a) ] or blanket accident [TEX.INS.CODE art. 3.51–6 § 2(a) ] and sickness policy shall be payable to the person insured, or to his designated beneficiary or beneficiaries, or to his estate, except that if the person insured be a minor or otherwise not competent to give a valid release, such benefits may be made payable to his parent, guardian, or other person actually supporting him.

TEX.INS.CODE art. 3.51–6 § 3.

■ Peggy is dead. Peggy did not name a beneficiary. That right was taken from the employees when the standard language of the policy was amended by endorsement to name Advantage as beneficiary and deprive the employees of the right to designate their beneficiary. Therefore, the proceeds must be paid to the estate of the "person insured." The policy defines Advantage's employees as the insured persons under the policy. Appellees, however, insist that "person insured" referred to in the statute is not the equivalent of the "insured person" referred to in the policy and that therefore Advantage should be considered the "person insured." It requires a strained reading of the law to arrive at such an interpretation. The policy refers to Advantage as the policy holder. The statute calls an employer such as Advantage either the employer, or, in a blanket policy, the policyholder. *See, e.g.,* TEX.INS.CODE ANN. art. 3.51–6, § 2(a)(2) (Vernon 1981) which states that an employer shall be deemed the policyholder. When stating who will receive the "payment of benefits" the Legislature did not include either the employer or policyholder among those eligible. The provision of the Travelers policy that provides for the payment of benefits to Advantage for the death, dismemberment or disability of its employees is in conflict with TEX.INS.CODE ANN. art. 3.51–6, § 3. A policy provision that contravenes a statute is void. *Hamaker v. American States Ins. Co. of Texas*, 493 S.W.2d 893, 895 (Tex.Civ.App.—Houston [1st. Dist.] 1973, writ ref'd n.r.e.). In such a situation, "the policy provision in question must be disregarded in arriving at a conclusion, and the

statute must be read into the policy as constituting the terms of the contract which the parties made at the time the policy was issued." *American Nat. Ins. Co. v. Foster,* 133 Tex. 588, 130 S.W.2d 287, 290 (1939). Peggy's estate is the estate of the person insured, and the Insurance Code requires that benefits payable under the policy be paid to her estate. Summary judgment for Appellee was improper.

The Stillwagoners also contend that the trial court erred in denying their motion for partial summary judgment finding that Peggy's estate, not Advantage, was the proper beneficiary of the policy on Peggy's life. We agree that it may be concluded upon this record that, as a matter of law, Peggy's estate, not Advantage should receive the policy proceeds. Nevertheless, several fact issues remain precluding a grant of summary judgment. As Appellees point out, Travelers denied Advantage's claim for the policy proceeds on the ground that Peggy's death did not occur in the course and scope of her employment. Travelers settled the Advantage claim without admitting liability and the summary judgment evidence leaves the question unresolved. The record also shows on its face that Appellants brought their action and the trial court rendered judgment within four years of Peggy's death. The personal representative of the estate is ordinarily the only person entitled to sue for the recovery of property belonging to the estate. There is no allegation that the decedent was testate or intestate, whether an administration was necessary or unnecessary, or whether the Appellants are the duly appointed representatives of Peggy's estate. *See Frazier v. Wynn,* 472 S.W.2d 750, 752 (Tex.1971); *John Hancock Mutual Life Ins. Co. v. Sally,* 163 S.W.2d 651, 652 (Tex.Civ.App.—Fort Worth 1942, no writ). Appellants argue that Appellants were required to assert this defense by verified pleading. However, Appellees did raise the defense in their response to Appellants' motion for partial summary judgment to which the Appellants did not object. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494 (Tex.1991) (An unpleaded affirmative defense may serve as a basis for summary judgment when it is raised in a summary judgment motion, and the opposing party does not object to a lack of pleading).

Since there remain outstanding issues of material fact, the trial court's denial of partial summary judgment in favor of the Stillwagoners was proper. The summary judgment for Travelers, Advantage, and Lummus is *reversed* and the cause *remanded* to the trial court.