IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-20120

_____

ALMA DeLEON, Individually and as Administrator
of The Estate of Melissa Morales,

                                    Plaintiff-Appellant,

versus

LLOYD'S LONDON, CERTAIN UNDERWRITERS; ET AL,
                                    Defendants,

LLOYD'S LONDON, CERTAIN UNDERWRITERS; COLIN M. OWEN,
                                    Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Texas

_____

July 18, 2001

Before REYNALDO G. GARZA, HIGGINBOTHAM, and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

     A corporation elected to self insure under Texas workers'
compensation laws.  As part of its opt-out from the protections of
workers' compensation, the company purchased from Lloyd's, London
insurance upon the life of its employees, payable to itself. An
employee was fatally injured in the course of work, and her
representative obtained a substantial sum in settlement of a claim
that the death was caused by the company's negligence. Lloyd's paid
the policy proceeds to the corporation. The representative of the

deceased employee later learned of the life insurance and filed this suit against Lloyd's, seeking the policy proceeds.

This is a diversity case and we apply the Texas law of insurable interest, ultimately affirming summary judgment in favor of Lloyd's, London. We conclude that under Texas law Lloyd's was obligated to pay the proceeds of the policy and discharged its obligation by paying the proceeds to the named beneficiary. We also conclude that the named beneficiary, lacking an insurable interest, held the proceeds in trust for the benefit of the estate of the insured employees.

I

In 1991, National Convenience Stores, Inc. purchased an accidental death insurance policy from Certain Underwriters at Lloyd's, London through its broker, Ronald H. Seaborg and his company, International Accident Facilities, Inc.[1] The policy provided benefits of $250,000 for each insured person, defined as the officers and employees of NCS. The proceeds were payable to NCS upon the accidental death of any Texas NCS employee that occurred within the scope and course of employment.

Melissa Morales worked for NCS as a clerk in one of its Stop-n-Go convenience stores. On April 19, 1992, a robber stabbed

---

[1] We will refer to both Ronald H. Seaborg and his company, International Accident Facilities, Inc., as "Seaborg."

2

Morales to death at her store. On July 7, 1992, Lloyd's paid the policy proceeds to NCS.

Alma DeLeon, the administrator of Morales's estate, filed suit against NCS in Texas state court. Within six months NCS settled with DeLeon, paying $1,050,000.00 to the estate in exchange for a comprehensive release from liability. NCS did not disclose the existence of its policy with Lloyd's. Only after settling with NCS did DeLeon learn of NCS's policy with Lloyd's.

On September 10, 1996, DeLeon filed suit in the United States District Court for the Southern District of Texas against Lloyd's and Seaborg, seeking to recover the policy benefits. Jurisdiction rested on diversity of citizenship. Seaborg and Lloyd's each filed a third-party complaint, claiming over against NCS. The court stayed the action pending resolution of *Tamez v. Certain Underwriters at Lloyd's, London*,[2] a case in state court involving virtually the same defendants and similar facts. When the *Tamez* case was decided, the district court lifted the stay.

After various amended complaints, cross-claims, and counter-claims, DeLeon decided not to pursue an action against NCS. Lloyd's, in turn, decided not to pursue its cross-claim against NCS. In short, Lloyd's became the only defendant. The district court granted summary judgment in favor of Lloyd's, and DeLeon appeals that judgment.

---

[2] 999 S.W.2d 12 (Tex. App. - Houston 1998).

DeLeon contends that the district court erred in granting summary judgment on her breach of contract claim.[3] We review a district court's grant of summary judgment de novo. Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[4] The Court must accept the evidence of the nonmoving party and draw all reasonable inferences in favor of that party.[5] In this diversity action, we review de novo the district court's interpretation of state law.[6]

III

DeLeon first contends that Lloyd's is collaterally estopped from arguing that NCS was the lawful beneficiary of the policy. She argues that *Tamez* is binding upon this Court. A federal court must accord a state-court judgment the preclusive effect it would enjoy under the law of the state in which the judgment was rendered.[7]

---

[3] DeLeon does not appeal the grant of summary judgment on her conversion claim.

[4] *See* Fed. R. Civ. P. 56(c); *Geoscan, Inc. v. Geotrace Techs., Inc.*, 226 F.3d 387, 390 (5th Cir. 2000).

[5] *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[6] *See McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000).

[7] *See* 28 U.S.C. § 1738 (2001); *Gammage v. West Jasper Sch. Bd. of Educ.*, 179 F.3d 952, 954 (5th Cir. 1999).

Under Texas law, the party seeking to invoke collateral estoppel must establish that (1) the facts sought to be tried in the second action were fully and fairly tried in the earlier suit; (2)those facts were essential to the judgment in the first suit; and (3) the parties were cast as adversaries in the first suit.[8] Although DeLeon was not a party in *Tamez*, she may still assert offensive, non-mutual collateral estoppel. Texas recognizes this variant of collateral estoppel, provided that the party against whom collateral estoppel is now asserted was either a party or in privity with a party in the first suit.[9] Lloyd's was a party in the *Tamez* case.

In *Tamez*, the families of two deceased NCS employees sued Lloyd's, NCS, and Seaborg for benefits from the same Lloyd's coverage at issue here. The trial court denied the plaintiffs' motion for partial summary judgment and granted the defendants' motions for summary judgment.[10] The Texas Court of Appeals affirmed in part and reversed in part, finding that NCS lacked an insurable interest in the lives of its employees under Texas common law and that NCS was not a proper beneficiary under Article 3.51-6 § 3 of

---

[8] *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998).

[9] *See Logan v. McDaniel*, 21 S.W.3d 683, 687-88 (Tex. App. - Austin 2000).

[10] *Tamez*, 999 S.W.2d at 13-14.

5

the Texas Insurance Code.[11] These findings were essential to its partial reversal of the summary judgment order,[12] and, according to the record, they were fully and fairly litigated.

The court also implicitly found that the estates of the deceased employees were proper beneficiaries under Article 3.51-6 § 3. Issues decided implicitly in a prior judgment have collateral estoppel effect if they were essential to that judgment.[13] The provision of the Texas Insurance Code at issue in *Tamez* and here requires payment to the person insured, his designated beneficiaries, or his estate.[14] The *Tamez* court found that NCS employees were the persons insured under the policy, that the deceased employees could not designate beneficiaries, and that NCS was not the proper beneficiary of the policy.[15] Implicit in the court's opinion, therefore, was the conclusion that the estates of the deceased employees were proper beneficiaries, a finding necessary to the judgment of the *Tamez* court.

Lloyd's argues that *Tamez* lacks preclusive bite for two reasons. First, that the *Tamez* decision was not a final judgment.

---

[11] *Id.* at 19, 20-21.

[12] *See id.* at 20-22.

[13] *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384-85 (Tex. 1985); 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.03[4][c] (3d ed. 1998).

[14] *See* Tex. Ins. Code Ann. art. 3.51-6 § 3.

[15] *See Tamez*, 999 S.W.2d at 19-21.

Second, that DeLeon's "wait and see" attitude ought to bar resort to this equitable doctrine. Both arguments lack merit.

The test for finality here is "whether the conclusion in question is procedurally definite."[16] Courts are to consider whether "the parties were fully heard, [whether] the court supported its decision with a reasoned opinion [and whether] the decision was subject to appeal or was in fact reviewed on appeal."[17]

The two holdings urged to be transportable are that (1) NCS lacked an insurable interest in the lives of its employees, and (2) that the estates of the deceased employees are proper beneficiaries under the policy. There is no indication that the parties in *Tamez* failed to receive a full hearing on these issues. The court's analysis of the merits of these questions was also thorough and reasoned. Its judgment has the same conclusive effect on the parties as the final judgment of a lower court.[18] The disputed findings were undoubtedly the "last word" of the *Tamez* court on these matters.[19] Lloyd's first argument fails.

---

[16] *Van Dyke*, 697 S.W.2d at 385 (quoting *Restatement (Second) of Judgments* § 13, cmt. g (1982)).

[17] *Id.* (quoting *Restatement (Second) of Judgments* § 13, cmt. g (1982)).

[18] *See Partee v. Phelps*, 840 S.W.2d 512 (Tex. App. - Dallas 1992).

[19] *See Restatement (Second) of Judgments* § 13, cmt. a (1982).

Lloyd's second argument is that courts are reluctant to apply offensive collateral estoppel where the plaintiff adopts a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment.[20] The difficulty here is that the theory has no factual legs. Lloyd's points to no specific dilatory tactics on the part of DeLeon. Indeed, the district court stayed this case pending resolution of *Tamez*.

We conclude that Lloyd's is collaterally estopped from trying again whether: (1) NCS has an insurable interest in the lives of its employees, and (2) the estates of the deceased employees of NCS are proper beneficiaries of the policy. As DeLeon is a deceased employee of NCS, she is a proper beneficiary of the policy.

DeLeon makes one additional argument based on *Tamez*. She notes that the *Tamez* court found in favor of the plaintiffs on their breach of contract claim, that Lloyd's was obligated to pay them directly, in reversing the trial court's summary judgment in favor of Lloyd's.[21] We disagree. As we read it, this essential holding was only a repudiation of the trial court's reasoning. The trial court apparently had adopted Lloyd's argument that plaintiffs stated no claim for breach of contract because "the policy was lawful and NCS was the proper beneficiary."[22] A Texas court of

---

[20] *See Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979).

[21] *See Tamez*, 999 S.W.2d at 21.

[22] *Id.*

appeals can not affirm a summary judgment on grounds not argued before the trial court.[23] Consequently, the *Tamez* court was constrained to reverse, despite other potentially adequate bases for affirming summary judgment on the claim for breach of contract.[24] Collateral estoppel then does not support DeLeon's breach of contract claim.

More to the point, the *Tamez* court found that "[t]here was no contractual relationship between [plaintiffs] and Lloyd's."[25] Under *Tamez*, DeLeon lacked privity with Lloyd's and Lloyd's did not breach its contract by paying the proceeds to NCS.

DeLeon replies that the contract should be reformed to include DeLeon as the lawful beneficiary of the policy. Whether *Tamez* also implicitly precludes reformation, given its express finding that there was no contractual relationship between the plaintiffs and the insurer, is not clear. This interpretation taxes the preclusive effect of an implicit holding and, while it is not without force, we are reluctant to rest there. We turn to the merits of reformation under Texas law.

---

[23] *See Maley v. 7111 Southwest Freeway, Inc.*, 843 S.W.2d 229, 234 (Tex. App. - Houston 1993).

[24] For instance, summary judgment may have been appropriate because plaintiffs were not named beneficiaries of the policy and were therefore not in privity with Lloyd's. *See* discussion, *infra*.

[25] *Tamez*, 999 S.W.2d at 21.

DeLeon argues that because reformation is the appropriate remedy for a violation of Article 3.51-6 § 3 of the Texas Insurance Code, she states a claim for breach of contract, so reformed.

As we explained, *Tamez* held that NCS did not have an insurable interest in the lives of its employees.[26] A putative beneficiary only has an insurable interest in the life of another where the beneficiary is "(1) so closely related by blood or affinity that he wants the other to continue to live, irrespective of the monetary considerations; (2) a creditor; [or] (3) one possessing a reasonable expectation of pecuniary benefit or advantage from the continued life of another."[27] Although NCS claimed to fall into the third category, the *Tamez* court found otherwise.[28]

Where an insurer pays the proceeds of a policy to a beneficiary having no insurable interest, Texas courts have

---

[26] *Tamez*, 999 S.W.2d at 19; *see also Stillwagoner v. Travelers Ins. Co.*, 979 S.W.2d 354, 360-62 (Tex. App. – Tyler 1998); *Cheeves v. Anders*, 28 S.W. 274 (Tex. 1894).

[27] *Tamez*, 979 S.W.2d at 17 (quoting *Drane v. Jefferson Standard Life Ins. Co.*, 161 S.W.2d 1057, 1058-59 (Tex. Comm. App. 1942)); *see also Stillwagoner*, 979 S.W.2d at 361. This doctrine is animated by two policy considerations: "(1) that no inducement should be offered to one person to take the life of another; and (2) that no one should be permitted to wager on the continuation of a human life." *Stillwagoner*, 979 S.W.2d at 360.

[28] As one Texas court has stated, "[t]he mere existence of an employer/employee relationship is never sufficient to give the employer an insurable interest in the life of the employee." *Stillwagoner*, 979 S.W.2d at 361.

consistently held that a constructive trust is the appropriate remedy.[29] As the *Tamez* court stated, "a person with no insurable interest will hold the proceeds of a policy as trustee for the benefit of those persons entitled by law to receive it."[30]  Texas courts have refrained from invalidating a policy for want of an insurable interest to avoid a windfall to insurers at the expense of lawful beneficiaries.  Instead, they require insurers to pay the policy proceeds to the beneficiary named in the policy.[31] As the Texas Supreme Court stated in 1894,

> [I]t is no concern of the insurer as to who gets the proceeds, except to see that it is paid to the proper parties, under its agreement. It is simply required to perform its contract, and the law will dispose of the money according to the rights of the parties.[32]

Once the named beneficiary is paid, Texas applies the equitable remedy of constructive trust to provide an avenue of recovery for a lawful beneficiary.[33]

Article 3.51-6 § 3 provides that "all benefits under any group or blanket accident and sickness policy shall be payable to the

---

[29] *See, e.g., Tamez,* 999 S.W.2d at 15-16; *Stillwagoner,* 979 S.W.2d at 360.

[30] *Tamez,* 999 S.W.2d at 15; *see also Wilke v. Finn,* 39 S.W.2d 836, 838-39 (Tex. Comm. App. 1931).

[31] *See Cheeves,* 28 S.W. at 275-76.

[32] *Id.* at 275.

[33] *See Tamez,* 999 S.W.2d at 15-16 & n.1; *Stillwagoner,* 979 S.W.2d at 358.

11

person insured, or to his designated beneficiary or beneficiaries, or to his estate."[34] As the *Tamez* court found, the policy here is a group accident policy and therefore governed by Article 3.51-6 § 3.[35] The *Tamez* court also determined that an NCS employee, and not NCS itself, was the "person insured" under the policy.[36] Where, as here, an NCS employee is deceased at the time the policy benefits mature, the proceeds can be paid under the statute to either "his designated beneficiary or estate."[37] Morales was not given the opportunity to designate her own beneficiary in this case.[38] As the court in *Tamez* determined, the deceased employee's estate was therefore a proper beneficiary under the policy.[39]

Relying primarily on the Texas case, *American National Insurance Co. v. Foster*,[40] DeLeon invokes the general principle that when a policy provision is invalid as contrary to the Insurance

---

[34] Tex. Ins. Code. Ann. art. 3.51-6 § 3 (2001).

[35] *Tamez*, 999 S.W.2d at 20-21; *see also* Tex. Ins. Code Ann. art. 3.51-6 §  1(a)(1)-(6) (2001) (defining the parameters of "group insurance" for purposes of the Texas Insurance Code).

[36] *Id.* at 20.

[37] *Tamez*, 999 S.W.2d at 20.

[38] *See id.* at 20; *Stillwagoner*, 979 S.W.2d at 363.

[39] *Tamez*, 999 S.W.2d at 20-21.

[40] 130 S.W.2d 287 (Tex. Comm. App. 1939).

Code,[41] the statute is read into the conflicting policy provision.[42] As we understand her argument, reformation of the policy would render the Morales estate the beneficiary. The estate's representative could then sue Lloyd's on the policy.

Language in a recent Texas Court of Appeals decision offers some support for reformation as a possible remedy for violating Article 3.51-6 § 3,[43] but the *Tamez* case is contrary. The *Tamez* court, in reversing the grant of summary judgment, found a constructive trust theory simultaneously holding that the plaintiffs had no contractual relationship with the insurer, characterizing the plaintiffs as third-party claimants.[44] These statements are at odds with a reformed contract.

The text of Article 3.51-6 § 3 provides little guidance. Nothing in the statute indicates whether reformation is

---

[41] As the Texas Supreme Court noted, "the policy provision in question must be disregarded in arriving at a conclusion, and the terms of the statute must be read into the policy as constituting terms of the contract which the parties made at the time the policy issued." *Id.* at 290.

[42] *See id.*

[43] *See Stillwagoner*, 979 S.W.2d at 363-64. Although the *Stillwagoner* court cited the language from *Foster* cited above, it did not actually reform a policy that contravened Article 3.51-6 § 3 in lieu of imposing a constructive trust. That court merely found that summary judgment in favor of the employer was inappropriate. Moreover, that court recognized that, "[i]f insurance benefits are paid to a beneficiary without an insurable interest, the beneficiary holds the proceeds for the benefit of those entitled by law to receive them." *Id.* at 358.

[44] *See Tamez*, 999 S.W.2d at 21.

13

contemplated. Nor is there an express textual linkage between the statute and the common-law insurable interest doctrine.

The role of section 3 becomes clearer with section 1 of the same provision of the Insurance Code. Article 3.51-6 § 1(a)(1) describes "group accident and health insurance" as a "policy issued to an employer or trustees of a fund established by an employer, who shall be deemed the policyholder, insuring employees of such employer *for the benefit of persons other than the employer*."[45] The *Tamez* court interpreted this language to mean that group insurance must be for the benefit of persons other than the employer.[46] Section 1(a)(1) of the Insurance Code therefore parallels at this point the common law insurable interest doctrine. Although not all forms of group accident and health insurance insure the life of the employee, the group accidental death policy in this case runs afoul of both the insurable interest doctrine and Article 3.51-6 § 1(a)(1).

Section 1(a)(1) of the statute precludes recovery by an employer under these circumstances and section 3 defines the proper beneficiaries of a group or blanket accident and sickness policy. Section 3 articulates three general categories of beneficiaries who may receive the proceeds of such a policy: (1) the person insured,

---

[45] Tex. Ins. Code. Ann. art. 3.51-6 § 1(a)(1) (2001) (emphasis added).

[46] *Tamez*, 999 S.W.2d at 20-21.

(2) his designated beneficiaries, and (3) his estate. Like section 1(a)(1), section 3 echoes the tenets of the common law insurable interest doctrine. As the *Tamez* court observed, Article 3.51-6 § 3 "impliedly does prohibit employers from benefitting [from group policies] in that it provides for payment of proceeds to the *person* insured or to *his* designated beneficiary."[47]  Sections 1(a)(1) and 3 therefore jointly codify and clarify the insurable interest doctrine in the context of group accident and sickness insurance.

Given the overlap between the common law and statutory regimes, violation of the insurable interest doctrine will often imply violation of the statute. Although these statutory provisions at times extend beyond the scope of the insurable interest doctrine, there is considerable common ground. Like *Tamez*, this case falls under the overlap, as both the common law and the statute were violated. Since constructive trust is already available to plaintiffs in such cases, nothing suggests that the legislature thought plaintiffs needed additional protection.[48]

---

[47] *Tamez*, 999 S.W.2d at 20 (emphasis in original).

[48] *See Tamez*, 999 S.W.2d at 16-21 (discussing violation of both insurable interest doctrine and Article 3.51-6 § 3); *Stillwagoner*, 979 S.W.2d at 359-63 (same); *see also Coppedge v. Colonial Savs. & Loan Ass'n*, 721 S.W.2d 933, 938 (Tex. App. - Dallas 1986), *writ ref'd n.r.e.* ("[W]hen the legislature creates a cause of action and a remedy for its enforcement, that legislation is regarded as cumulative of the common-law cause of action and remedy, unless the statute expressly or impliedly negatives the latter."); *Widgeon v. Eastern Shore Hosp. Ctr.*, 479 A.2d 921, 929 (Md. 1984) (holding that there is no need to imply a new right of action where the common law already provides an action to remedy the violation)

Our conclusion is confirmed by the reality that allowing reformation—and a later contract action—in such cases would also create inequitable results. The plaintiff could either (1) sue the employer under the common law, seeking a constructive trust on the proceeds; or (2) sue the insurer on a breach-of-contract theory.[49] The first option presents little difficulty, unlike a suit against the insurer. The insurer could be required to pay the policy proceeds twice: first, to the employer under the policy, and second, to the plaintiff for breach of contract. Requiring Lloyd's to pay twice would be inconsistent with the insurable interest doctrine as applied to the group accident policy. As we have explained, under the insurable interest doctrine, where a constructive trust is applied, the insurer only pays what it owes under the insurance policy. This doctrine does not impose a

---

(cited approvingly in *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995)).

[49] Double recovery by the plaintiff, by allowing it to recover the full amount from both the employer and the insurer, is not permitted. *See Coppedge*, 721 S.W.2d at 939 ("It is well-established that an aggrieved party is entitled to only one recovery for the same loss, even when alternative remedies exist."). Similarly, a plaintiff could not recover from both the insurer and the employer in successive actions. Finally, we note that the employer and insurer can not be held jointly and severally liable for breach of contract, as only the insurer would be in breach for having failed to perform its part of the contract. *See Pitman v. Lightfoot*, 937 S.W.2d 496, 528 (Tex. App. - San Antonio 1996) ("In the law of contracts, joint and several liability usually arises when two or more promisors in the same contract promise the same or different performances to the same promisee.").

"penalty" of double payment on the insurer for having entered into a policy whose beneficiary lacks an insurable interest.[50]

This is not to say that the doctrine of insurable interest is not enforced. The Insurance Code creates incentives to comply. The Texas Board of Insurance Commissioners may revoke the license of an insurer who fails to comply with the provisions of the Texas Insurance Code.[51] The threat of revocation may prompt an insurer to think twice before drafting a policy conflicting with the Code. Employers also are deterred from entering into policies which violate the statute and common law, as they stand to lose both the proceeds through constructive trust and the premiums they have paid under the policy. In short, we remain convinced that Texas courts, wearing their common-law hats, would not conclude that reformation and a corresponding breach of contract action are necessary to vindicate the objectives of both the Texas statute and common law: that the insurer perform its contract and that the persons lacking

---

[50] *See Cheeves*, 28 S.W.2d at 275-76. *Compare McDonald v. McDonald*, 632 S.W.2d 636, 639-40 (Tex. App. - Dallas 1982) (allowing a direct suit against an insurer who has prior notice of a rival beneficiary possessing a valid insurable interest, yet who continues to pay life insurance proceeds to the named beneficiary lacking an insurable interest).

[51] *See* Tex. Ins. Code Ann. art. 3.55 (2001); *cf. Stewart Title Guaranty Co. v. Becker*, 930 S.W.2d 748, 754-55 (Tex. App. – Corpus Christi 1996) (finding no need to imply a cause of action from the Texas Insurance Code given that the Board has the power to punish title insurers who fail to comply with the Code).

the requisite interest in the life of the insured not retain the benefits of the policy.[52]

We are persuaded that DeLeon has failed to state a claim for breach of contract action against Lloyd's. DeLeon may be able to seek a constructive trust against NCS for the proceeds, a course she has chosen not to pursue, and we offer no opinion on that prospect.

V

DeLeon also contends that the district court erred in refusing to award the Morales estate interest and attorney's fees under Article 21.55 of the Texas Insurance Code. Article 21.55 requires the prompt payment or resolution of claims according to a defined timetable.[53] This timetable is only triggered by the filing of a "claim," defined as "a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary."[54] The Code

---

[52] In her reply brief, DeLeon claims that the December 10, 1999, decision by a Texas trial court in *Smith v. Certain Underwriters at Lloyd's, London*, No. 96-52348, collaterally estops Lloyd's from asserting that it is not jointly and severally liable with NCS for the policy proceeds. This argument could have been raised in DeLeon's opening brief and therefore may be deemed waived. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).

[53] Tex. Ins. Code Ann. art. 21.55 §§ 3-4 (West 2001).

[54] *Id.* at § 1(3).

18

further provides that, "where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article," eighteen per cent interest and attorney's fees must be paid to either "the holder of the policy, or the beneficiary making a claim under the policy."[55]

Although Article 21.55 is to be liberally construed,[56] by its plain language the statutory penalties do not apply. Neither Morales nor her estate is "named in the policy or contract" as a beneficiary. Under the policy issued by Lloyd's, the proceeds were to be paid to the beneficiary, NCS, upon the death of an employee. NCS presented a "first party claim" that "must be paid by the insurer directly to the . . . beneficiary."[57] DeLeon concedes that NCS was the named beneficiary on the policy and that NCS submitted a claim to Lloyd's. Although reformation might operate to place the Morales estate in the position of the policy beneficiary, we have rejected reformation on these facts.

The legislature has framed the claim-processing deadlines of Article 21.55 in terms of the primary relationship between the insurer and the "named" beneficiary—not the lawful, yet unnamed beneficiary. The statute does not readily apply to a "claim" made by a party through the filing of a complaint in

---

[55] *Id.* at § 6.

[56] *See id.* at § 8.

[57] *Id.* at § 1(3).

19

litigation. As one Texas court has observed, "The purpose of the statutory deadline contained in Article 21.55 is to guarantee the prompt payment of claims made pursuant to policies of insurance; not to create a statutory windfall for one party or the other."[58] We do not believe that Texas courts would so read Article 21.55.

## VI

DeLeon also objects to the district court's refusal to enter a judgment declaring her rights under the policy. The district court did not abuse its discretion in refusing declaratory relief. It decided the case on the merits by its grant of summary judgment. We therefore AFFIRM the judgment of the district court.

AFFIRMED.

---

[58] *Daugherty v. Am. Motorists Ins. Co.*, 974 S.W.2d 796, 798 (Tex. App. - Houston 1998).