77 S.W.3d 859 (2002)
CERTAIN UNDERWRITERS AT LLOYD'S LONDON, C.M. Owen, P.M. Donner, D.W. Sear, T.W. Brien, J.D. Lloyd, P.W. Murrell, M.J. Davis, J.H. Davies, R.A. Lissenden, R.J.H. Payne, J.M. Donner, D.R. Neil, V.W. Broad, A.P. Targett, A.J. Avery, P.G. Butler, P.J.M. Battle, R.J. Dackombe, J.W. Dendy, R.D. Hazell, J.B. Hose, J.P. Tilling, S.J. Burnhope, J.S. Darling, R.J. Morse, G.A. Morese, G.A. Argent, G.M. Chichester, D.A. Thomas, S.D. Chappel, B.P.D. Kellett, A.F. Whitbread, P.A. Minter, T.G. Green, B.P. Bartell, P.E. Holland, J.H. Bristow, and National Convenience Stores, Inc., Appellants/Cross-Appellees,
v.
Angela M. SMITH, Individually and As Next Friend of Brandon William Hendrix, A Minor, Appellees/Cross-Appellants.
No. 14-00-00391-CV.
Court of Appeals of Texas, Houston (14th Dist.).
April 25, 2002.
*862 Dan K. Horn, Irving, Daryl G. Dursum, Houston, Edward C. Mainz, San Antonio, John M. Weaver, Irving, for appellants.
Jeff Joyce, Michael D. Myers, Scott M. Clearman, Houston, for appellees.
Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

MAJORITY OPINION
WANDA McKEE FOWLER, Justice.
This is an appeal and cross-appeal by National Convenience Stores, Inc. and Certain Underwriters at Lloyd's, London, from summary judgment rulings and a bench trial. Appellants challenge (1) the award to appellee of the proceeds of an insurance policy National Convenience Stores held on the lives of its employees, (2) the court's findings at the bench trial on attorney's fees and the applicability of Texas Insurance Code article 21.55, and (3) prejudgment interest. Lloyd's additionally argues that it should not be held jointly and severally liable for the award. Appellee/cross-appellant challenges the trial court's summary judgment in favor of Lloyd's that article 21.55 was not applicable to her claims. We affirm in part and reverse and remand in part.

FACTS
National Convenience Stores, Inc. ("NCS") owned and operated "Stop `N Go" convenience stores in Texas and elsewhere in the United States. On December 4, *863 1991, William Smith, an NCS employee, was killed while in the course and scope of employment at an NCS convenience store. NCS had purchased an accidental death insurance policy from Certain Underwriters at Lloyd's, London ("Lloyd's") that provided that Lloyd's would pay NCS $250,000 upon the accidental death of any NCS Texas employee killed during the course and scope of employment with NCS. NCS was not a worker's compensation subscriber. After William Smith's death, NCS submitted a claim and was paid $250,000 in proceeds. Angela M. Smith, William Smith's widow, subsequently learned of this payment.

PROCEDURAL HISTORY
After learning that NCS was paid the insurance benefits, Angela M. Smith, individually and as next friend of Brandon William Hendrix, a minor ("Smith"), sued Lloyd's and others to recover the $250,000.[1] Lloyd's brought NCS into the suit as a third-party defendant, and Smith amended her pleadings to seek the insurance proceeds from all defendants.
Smith also moved for partial summary judgment asking the court to declare her entitled to recover the insurance proceeds arising from her husband's death. The trial court granted Smith's motion, entering a partial summary judgment in her favor. The trial court also granted summary judgment in favor of Lloyd's on Smith's claims of breach of contract, conversion, money had and received, and conspiracy. Lloyd's motion for summary judgment with respect to Smith's claim under Texas Insurance Code article 21.55 was taken under advisement and never ruled on before trial.
Ultimately, the trial judge conducted a bench trial on Smith's claim for attorney's fees under the Declaratory Judgment Act and the applicability of Texas Insurance Code article 21.55, and signed a judgment awarding Smith the policy benefit of $250,000, attorney's fees of $87,5000, and prejudgment interest of $119,013.70. The defendants were held jointly and severally liable for the relief granted.
In support of the judgment, the trial court issued findings of fact and conclusions of law, including the following findings of fact:
16. Were Tex. Ins.Code art. 21.55 to apply in this case, the court would award interest as damages pursuant to Tex. Ins.Code art. 21.55 § 6. Such an award would include interest as damages at an annual rate of 18%, simple interest, beginning to accrue November 27, 1995. As of the date of the court's judgment, the amount would equal $181,602.73.
17. An award under Tex. Ins.Code art. 21.55 § 6 would also include an award of attorneys' fees in an amount that would leave the plaintiffs with the $250,000 policy benefit and the $181,602.73 interest as damages after payment to their counsel under the contingent fee employment contract. The award of attorneys' fees under these constraints would equal $232,401.47, increasing to $287,735 if this matter is appealed.
The trial court's conclusions of law included the following: (1) an award to Smith of $87,500 in attorney's fees under Tex. Civ. Prac. & Rem.Code § 37.009 was reasonable, necessary, just and equitable; (2) Lloyd's was entitled to judgment on Smith's claims for damages and attorney's fees under Texas Insurance Code article 21.55 because article 21.55 was not applicable to the action; (3) Lloyd's, NCS, and the other defendants were jointly and severally liable *864 for the $250,000 policy benefit and attorneys' fees of $87,500; and (4) pursuant to Tex. Civ. Prac. & Rem Code § 37.003, 37.004, 37.009, and 37.011, Smith was entitled to recover the policy benefit and attorneys' fees from the defendants jointly and severally.
On appeal, appellant NCS raises 14 issues (not including subparts). NCS's first ten issues relate to the trial court's holding that NCS did not have an insurable interest in the life of William Smith and that Smith was entitled to the $250,000 insurance proceeds. In raising these issues, NCS asks this panel to reconsider this court's prior decision in Tamez v. Certain Underwriters at Lloyd's, London, 999 S.W.2d 12 (Tex.App.-Houston [14th Dist.] 1998, pet. denied), involving several of the same defendants and the same insurance policy. NCS's eleventh and twelfth issues challenge the trial court's award of attorney's fees based on the Declaratory Judgment Act, Smith's failure to segregate the attorney's fees, and the legal and factual sufficiency of the fee award. In its thirteenth and fourteenth issues, NCS complains that the trial court should not have awarded prejudgment interest, and alternatively, that prejudgment interest was improperly awarded under Texas Finance Code section 302.002, and should have been calculated under the common law as provided in Johnson & Higgins of Texas v. Kenneco Energy, Inc., 962 S.W.2d 507 (Tex.1998).
Lloyd's brings three issues. In the first two issues, Lloyd's challenges the trial court's judgment holding it jointly and severally liable for the award of the $250,000 insurance proceeds, attorney's fees, and prejudgment interest. In the third issue, Lloyd's argues, as does NCS, that NCS has an insurable interest in the lives of its employees.
Cross-appellant Smith brings a single issue complaining of the trial court's finding that Texas Insurance Code article 21.55 is not applicable to her claims.
We will address the claims of each party in turn, concluding with Smith's cross-appeal.

NCS'S LIABILITY
1. Insurable Interest and the Applicability of Collateral Estoppel
While the present case was pending in the trial court, this court issued its decision in Tamez v. Certain Underwriters at Lloyd's, London, 999 S.W.2d 12 (Tex.App.-Houston [14th Dist.] 1998, pet. denied), a case involving a nearly identical fact situation and claims against NCS and Lloyd's for the insurance policy proceeds under the same policy at issue here. In Tamez, a different panel of this court reached three conclusions: (1) the plaintiffs had standing to seek the policy proceeds; (2) NCS has no insurable interest in the life of its employees; and (3) NCS recovered benefits from the policy in violation of article 3.51-6, section 3 of the Texas Insurance Code. Id. at 15-21. The Tamez court also found that there was no contractual relationship between Lloyd's and the plaintiffs giving rise to the duty of good faith and fair dealing. Id. at 21.[2] The Texas Supreme Court denied the defendants' petition for review, and, at about the same time the defendants filed their briefs, denied a motion for rehearing.[3]
*865 NCS contends that this court should reconsider its decision that NCS lacks an insurable interest in the lives of its employees for the following reasons: (1) NCS has a unique relationship with its Texas employees and incurs substantial expenses for work-related deaths, so there is a clear and rational business purpose for having the insurance policy; (2) NCS has a right to enforce the Lloyd's policy as a surplus lines policy under Texas Insurance Code article 1.14-2, section 9, to which Texas Insurance Code article 3.51-6 is not applicable; (3) the Lloyd's policy is not a group policy under article 3.51-6, but a surplus lines policy enforceable as a manuscript policy pursuant to article 1.14-2, section 9; and (4) alternatively, if article 3.51-6 is applicable, the trial court misapplied the "person insured" language.
Lloyd's joins in NCS's argument. It asserts that (1) Texas Insurance Code article 3.49-1 mandates that the doctrine of insurable interest be liberally construed, and (2) the named beneficiary of a life insurance policy has an insurable interest in the life of another to the extent the beneficiary suffers actual pecuniary loss if the insured person dies. Additionally, Lloyd's asserts that third parties like Smith lack standing to assert that the named beneficiary lacks an insurable interest with regard to the person whose life has been insured.
In response, Smith argues that this court's opinion in Tamez decided these issues; therefore, collateral estoppel bars the defendants from relitigating them. Alternatively, Smith contends that the summary judgment granted on her breach of contract claim should be reversed and remanded for trial in the event the judgment in her favor is overturned. NCS and Lloyd's reply that Smith may not assert collateral estoppel because she failed to preserve the argument below. Lloyd's further argues that neither collateral estoppel nor law of the case is applicable here.
a. Collateral estoppel
We first address the collateral estoppel issue. Collateral estoppel is issue preclusion. Barr v. Resolution Trust Corp., 837 S.W.2d 627, 629 (Tex.1992). It prevents a party from relitigating an issue that it previously litigated and lost. Quinney Elec., Inc. v. Kondos Entertainment, Inc., 988 S.W.2d 212, 213 (Tex.1999) (per curiam). Application of collateral estoppel is a question of law for the court. Hill v. Heritage Resources, Inc., 964 S.W.2d 89, 138 (Tex.App.-El Paso 1997, pet. denied). For collateral estoppel to apply (1) the facts sought to be litigated in the second action must have been fully and fairly litigated in the prior action, (2) the facts must have been essential to the judgment in the first action, and (3) the parties must have been cast as adversaries in the first action. Sysco Food Services, Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex.1994).
Collateral estoppel is an affirmative defense. Id. at 802. The party asserting it has the burden of pleading and proving its elements. In re H.E. Butt Grocery Co., 17 S.W.3d 360, 377 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). The party relying upon collateral estoppel must introduce into evidence the judgment and pleadings from the prior suit; if the party does not do this, the doctrine of collateral estoppel is not applicable in the second proceeding. Avila v. *866 St. Luke's Lutheran Hosp., 948 S.W.2d 841, 846 (Tex.App.-San Antonio 1997, pet. denied). This court has previously held that a party's claims were barred when the party never presented her collateral estoppel argument to the trial court. Mayes v. Stewart, 11 S.W.3d 440, 450 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (citing Tex.R.App. P. 33.1(a)).
A review of the record in this case reveals no specific pleading in which Smith asserted collateral estoppel. The parties and the court were aware of the pending Tamez case. The parties attached affidavits, deposition testimony, and other evidence filed in Tamez in support of their motions, and once the opinion was issued, both sides referenced it in support of their arguments in the trial court. Nevertheless, Texas law is clear that collateral estoppel is an affirmative defense, and a party seeking to rely on it has the burden to plead and prove it; otherwise it is waived.[4] None of Smith's petitions, including the last live petition, assert collateral estoppel as an affirmative defense, and the record reveals no evidence that collateral estoppel was argued to the trial court. Therefore, we hold that Smith cannot raise collateral estoppel on appeal.
b. Insurable interest
We turn now to appellants' assertion that NCS has an insurable interest in the lives of its employees.
Historically, Texas courts have held that it is against the public policy of Texas to allow anyone who has no insurable interest to be the owner of a policy of insurance upon the life of a human being. Cheeves v. Anders, 28 S.W. 274, 275, 87 Tex. 287, 291 (Tex.1894). The foundation of this doctrine is a prohibition on life insurance policies that offer a financial inducement to destroy the life of the insured person. Id. at 28 S.W. at 275, 87 Tex. at 293-94; see also Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354, 360 (Tex.App.-Tyler 1998, no pet.) ("The insurable interest requirement for beneficiaries of life insurance rests on two coexisting policy considerations: (1) that no inducement be offered to one person to take the life of another; and (2) that no one should be permitted to wager on the continuation of a human life."). In 1942, the Texas Supreme court articulated three general classes of those who may have an insurable interest in the life of another: (1) one so closely related by blood or affinity that he wants the other to continue to live, irrespective of monetary considerations; (2) a creditor; and (3) one having a reasonable expectation of pecuniary benefit or advantage from the continued life of another. Drane v. Jefferson Standard Life Ins. Co., 139 Tex. 101, 161 S.W.2d 1057, 1059 (1942).
Against this backdrop, the Texas legislature added article 3.49-1 to the Texas Insurance Code in 1953. See Tamez, 999 S.W.2d at 17. In 1991, at the time the policy at issue was purchased, section 4 of article 3.49-1 provided that the provisions of the Code were "cumulative of existing law in Texas, statutory and otherwise, on the question of insurable interest." Id.[5] *867 Section 4 further directed that the Code "shall be liberally construed to effectuate its purposes, and its provisions are not to be limited or restricted by previous declarations or holdings of the Courts of Texas defining the term insurable interest." Id. Nevertheless, the Tamez court determined, after surveying the case law that developed following the enactment of article 3.49-1, that the categories of persons having an insurable interest as articulated in Drane remained unchanged. Tamez, 999 S.W.2d at 17-18.
In analyzing the policy at issue, which NCS concedes is the same policy at issue here, the Tamez court determined that NCS did not fit into any of the Drane categories, and therefore NCS did not have an insurable interest in the lives of its employees. Id. at 19. Accordingly, the policy was "void as to NCS." Id. Further, the Tamez court found that NCS was not the proper beneficiary and found that it recovered the benefits from the policy in violation of the Insurance Code. Id. at 21. The court reached this conclusion because it interpreted article 3.51-6, section 3 as impliedly prohibiting employers from benefitting from insurance proceeds "in that it provides for payment of proceeds to the person insured or to his designated beneficiary." Id. at 20. Accordingly, the court determined that, under the Insurance Code, the plaintiffs were the proper beneficiaries. See id. at 19-21. The court rejected NCS's argument that it fell within the category of one having a reasonable expectation of pecuniary benefit or advantage from the continued life of another. Id. at 18. The court likewise rejected NCS's alternative argument that it has an insurable interest because it sustains a substantial pecuniary loss upon the death of an employee in the form of funds paid to the families and expenses for potential liability in litigation. Id. at 19.
Similarly, in Stillwagoner v. Travelers Ins. Co., the Tyler Court of Appeals looked to the Drane categories of persons with an insurable interest to determine that a home health care company did not have an insurable interest in the life of a temporary employee hired two months before her death. Stillwagoner v. Travelers Ins. Co., 979 S.W.2d at 361-63. As that court explained:
The Travelers policy paid Advantage $200,000 without regard to whether Advantage suffered any loss at all. Therefore, it stood to gain a great deal from its wager on the life of its employee in the likely event that no claim was brought or if the claim could be settled for less than the policy benefits. Viewed in this light, the policy appears to be a wagering contract on the lives of the persons insured, one of the evils the insurable interest rule was devised to discourage. We conclude Advantage had no insurable interest in [the deceased employee's] life.
Id. at 363. In reaching its conclusion, the Stillwagoner court stated that "the mere existence of an employer/employee relationship is never sufficient to give the employer an insurable interest in the life of the employee." Id. at 361.
We find that the reasoning of Tamez controls the determination of this issue, *868 and we find that NCS has no insurable interest in the lives of its employees.[6] We therefore overrule NCS's first ten issues. Consequently, we do not reach Smith's alternative argument that the summary judgment in favor of Lloyd's on Smith's breach of contract claim should be reversed.
3. Attorney's Fees
Having determined that the trial court correctly held that Smith was the proper beneficiary of the insurance proceeds, we now turn to the issue of attorney's fees. Appellants raise numerous challenges to the fee award. NCS argues that there was no basis for an award of attorney's fees because a declaratory judgment action may not be coupled with a damage action simply to pave the way to recover attorney's fees, and challenges the legal and factual sufficiency of the evidence of attorney's fees. Lloyd's makes a similar argument that a declaratory judgment action is not available to settle disputes already pending before a court, and additionally argues that it cannot be directly liable for attorney's fees because the trial court found there was no contract between Lloyd's and Smith, and there is no independent basis for liability. In response, Smith argues that the case involved a declaration of the party's rights under the policy since its inception, and is not an attempt to "boot strap" a declaratory action for the attorney's fees.
a. Did Smith bring a valid declaratory judgment action?
The trial court's conclusions of law state that "pursuant to Tex. Civ. Prac. & Rem Code §§ 37.003, 37.004, 37.009, and 37.011, Smith is entitled to recover the policy benefit and attorneys' fees from the defendants jointly and severally." There is no question that the court is empowered to make a judicial determination of the litigants' rights, status, and relations under an insurance policy. See Tex. Civ. Prac. & Rem Code §§ 37.003, 37.004, and 37.011 (Vernon 2001). The availability of another remedy that might be entirely adequate does not necessarily deprive the trial court of jurisdiction to grant declaratory relief. Texas Liquor Control Bd. v. Canyon Creek Land Corp., 456 S.W.2d 891, 895 (Tex. 1970); Armentrout v. Texas Dep't of Water Resources, 675 S.W.2d 243, 245 (Tex. App.-Austin 1984, no writ). A declaratory judgment proceeding is an additional and cumulative remedy, and does not supplant any existing remedy. McKinley v. McKinley, 483 S.W.2d 310, 312 (Tex.Civ. App.-Tyler 1972,), rev'd on other grounds, 496 S.W.2d 540 (Tex.1973). Further, it is well-recognized that a declaratory judgment action is an appropriate means to resolve a controversy involving entitlement to insurance proceeds. See, e.g., Empire Life Ins. Co. v. Moody, 584 S.W.2d 855, 858 (Tex.1979); Marineau v. General American Life Ins. Co., 898 S.W.2d 397, 405 (Tex.App.-Fort Worth 1995, writ denied).
NCS and Lloyd's protest that the declaratory action is not an appropriate basis for the relief awarded. We find appellants' authorities factually distinguishable because they involved either declaratory judgment counterclaims, declaratory actions mirroring contract claims already pending, or separate declaratory actions filed after pending actions on the same *869 subject. None of these happened here. Smith alleged in her original petition that NCS lacked any insurable interest in the lives of its employees and thus the insurance benefits under the Lloyd's policy must be paid to the estate of William Smith. Smith prayed for, among other things, that she be awarded the proceeds of the Lloyd's policy. Smith's second amended original petition, in which she added NCS as a defendant, repeated that NCS lacked an insurable interest in the policy proceeds and that the estate of William Smith was entitled to the proceeds, and further alleged that NCS held the proceeds in a constructive trust. In Smith's sixth amended pleading, the last live pleading, Smith specifically invoked a request for declaratory relief, alleging that the policy provision naming NCS as the beneficiary was void and illegal because NCS had no insurable interest in the life of William Smith and that the Smiths were the lawful beneficiaries under the policy. Smith's pleadings demonstrate that the gravamen of her action, from its inception, was a declaration of her rights concerning the policy proceeds.
Appellants contend, however, that Smith's action was not one for declaratory relief, as evidenced by the fact that she did not amend her pleadings to reflect the addition of a specific pleading for declaratory relief until after the trial court initially determined that NCS lacked an insurable interest. NCS particularly complains that Smith's claim for attorney's fees against it did not appear until Smith's sixth amended petitionfiled several months after the trial court entered an order holding that William Smith's estate was entitled to the policy proceeds. However, appellants cite no authority that holds that a particular type of pleading is required to support a claim for declaratory relief. On the contrary, Texas law is well settled that no particular type of pleading is required under the Declaratory Judgments Act. James v. Hitchcock Indep. School Dist., 742 S.W.2d 701, 704 (Tex. App.-Houston [1st Dist.] 1987, writ denied); Frost v. Sun Oil Co., 560 S.W.2d 467, 473 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ). Pleadings under this Act are to be liberally construed. First American Title Ins. Co. of Texas v. Willard, 949 S.W.2d 342, 352 (Tex.App.-Tyler 1997, writ denied).
Likewise, neither appellant points to any authority that holds that a plaintiff may not amend her pleadings several times so as to fully reflect the relief sought. Generally, a party is entitled to amend its pleadings subject only to the opposing party's right to show prejudice or surprise. See Greenhalgh v. Service Lloyds Ins. Co., 787 S.W.2d 938, 940-41 (Tex.1990); see also Tex.R. Civ. P. 63, 66. Indeed, Stoner v. Thompson, 578 S.W.2d 679 (Tex.1979), from the Texas Supreme Court, is particularly instructive on this issue. There, the Court determined that a plaintiff was permitted to make a trial amendment that asserted declaratory relief when the opposing party had fair notice of the declaratory relief sought. Id. at 684 ("A determination of the question of the validity of the Malkans' contract to buy the stock had to be made before the trial court could have granted the Malkans relief under any of their prior pleadings.").
We also reject NCS's contention that to hold that the instant action was one for declaratory relief is to hold that every breach of contract action is automatically one for declaratory relief. At no time did Smith assert a breach of contract action against NCS. Further, the trial court found that Smith could not maintain a breach of contract action against Lloyd's. The purpose of a suit for declaratory judgment is to have the court clarify one's *870 rights. Frost v. Sun Oil Co., 560 S.W.2d at 473.
In short, from its inception, Smith's suit was one to determine the rights that William Smith's estate had under the insurance policy at issue. We therefore overrule NCS's eleventh and twelfth issues, and hold that attorney's fees were properly awarded under the Declaratory Judgments Act.
b. Amount of fees awarded
We next address NCS's complaints regarding the amount of attorney's fees awarded. The Declaratory Judgments Act provides that in any proceeding under the Act "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 2000). The Act does not require an award of attorney's fees to the prevailing party, but merely provides that a court "may" award them. Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex.1998). The Act entrusts attorney fee awards to the trial court's sound discretion. This discretion is subject only to the requirements that (1) any fees awarded be reasonable and necessary, which are matters of fact, and (2) any fees be equitable and just, which are matters of law. Id. at 21. It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles. Id. Therefore, in reviewing an attorney fee award under the Act, the court of appeals must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust. Id.
Generally, when a plaintiff pleads several causes of action including a request for a declaratory judgment and for an award of attorney's fees, and is subsequently awarded declaratory relief but denied other relief, he is only entitled to those attorney's fees attributable to the declaratory judgment action. Leon Ltd. v. Albuquerque Commons Partnership, 862 S.W.2d 693, 709 (Tex.App.-El Paso 1993, no writ). If attorney's fees are authorized for some, but not all, of a party's claims, that party generally has the duty to segregate the recoverable attorney's fees from the unrecoverable attorney's fees. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10-11 (Tex.1991). An exception to this duty to segregate arises when the attorney's fees are incurred in connection with claims arising out of the same transaction and are so interrelated that the prosecution or defense of such claims entails proof or denial of essentially the same facts. Id. at 11. Therefore, when the causes of action involved in a suit are dependent upon the same set of facts or circumstances and are intertwined to the point of being inseparable, the party suing for attorney's fees may recover the entire amount covering all claims. Id.
As we have determined, the gravamen of Smith's action was a determination of rights and obligations under an insurance policy. Smith alleged that William Smith's estate was the proper beneficiary under the policy, and both NCS and Lloyd's defended against Smith's claims by arguing (as they do here) that NCS was the proper beneficiary under the policy. Smith's claims against NCS for a constructive trust involved the same operative facts and the same question of law raised in her claims against the other defendantsspecifically, whether NCS had an insurable interest in the policy proceeds. See McLendon v. McLendon, 862 S.W.2d 662, 672-74 (Tex.App.-Dallas 1993, writ denied), disapproved on other grounds, Dallas Market Center Development Co. v. Liedeker, 958 S.W.2d 382 (Tex.1997). Therefore, *871 Smith's attorney's fees fell within the exception to the general rule regarding segregation of attorney's fees. Stewart Title, 822 S.W.2d at 11.
We further find that the trial court did not abuse its discretion in awarding attorney's fees of $87,500 to Smith. The fees equal 35% of the $250,000 awarded under the policy, which is within the range contemplated by the terms of Smith's contingency fee contract. The record also includes substantial testimony on the attorney's fees issue, including testimony from Smith's expert on attorney's fees that a fee award of $134,615, increasing to $166,666 on appeal, was at "the low end" of a reasonable fee. The trial court, as the finder of fact, could have reasonably concluded that it was equitable and just to award reasonable and necessary attorney's fees in the amount of $87,500. We therefore hold that the trial court did not abuse its discretion in awarding attorney's fees of $87,500 to Smith. NCS's eleventh and twelfth issues are overruled.
4. Prejudgment Interest
NCS's thirteenth and fourteenth issues challenge the trial court's award of prejudgment interest. Texas Finance Code section 302.002, upon which Smith relies, provides as follows:
If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due. If an obligor has agreed to pay to a creditor any compensation that constitutes interest, the obligor is considered to have agreed on the rate produced by the amount of that interest, regardless of whether that rate is stated in the agreement.
Tex. Fin.Code Ann. § 302.002 (Vernon 2001). This section is a recodification of the former article 5069-1.03 of the Texas Annotated Civil Statutes.[7] Cases interpreting the former article 5069-1.03 reject the application of the statute in anything other than a breach of contract case. See, e.g., International Ins. Co. v. Dresser Indus., Inc., 841 S.W.2d 437, 447 (Tex.App.-Dallas 1992, writ denied); Shell Pipeline Corp. v. Coastal States Trading, Inc., 788 S.W.2d 837, 848-49 (Tex.App.-Houston [1st Dist.] 1990, writ denied), disapproved on other grounds, Johnson & Higgins of Texas v. Kenneco Energy, Inc., 962 S.W.2d 507 (Tex.1998).
Here, Smith did not allege breach of contract against NCS, and she did not prevail on her breach of contract claim against Lloyd's. As to NCS, Smith alleged that NCS, which was not entitled to the policy proceeds, held the proceeds in a constructive trust for the benefit of the estate of William Smith. The trial court determined that the estate of William Smith is entitled to the proceeds of the policy; therefore, while not explicitly stated, the trial court's judgment implies that Smith is entitled to the imposition of a constructive trust against NCS for the amount of the proceeds. Because Smith's claim against NCS for a constructive trust does not sound in contract, we hold that *872 section 302.002 does not apply. Consequently, in accordance with the Texas Supreme Court's directive in Johnson & Higgins of Texas v. Kenneco Energy, Inc., 962 S.W.2d 507, 531 (Tex.1998), we sustain NCS's thirteenth and fourteenth issues and remand the case to the trial court for a determination of the availability of prejudgment interest under the common law and, if prejudgment interest may be awarded, that it be calculated in accordance with the Texas Supreme Court's directive. Id. (holding that, under the common law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed).

LLOYD'S LIABILITY
Lloyd's raises three issues on appeal. First, it contends that it should not be held jointly and severally liable to the Smiths. Second, Lloyd's contends that an insurer should not be jointly and severally liable for attorney's fees and interest to a party not in privity with it. Finally, Lloyd's argues that an employer should have an insurable interest in the life of its employee if the employer could sustain a substantial pecuniary gain through the continued life of the employee or would have a considerable pecuniary loss in case of his or her death. Because we have determined that NCS did not have an insurable interest in the life of William Smith, we overrule the third issue. We will address Lloyd's first and second issues together.
Lloyd's argues it is not jointly and severally liable for the policy proceeds because requiring it to pay the benefits a second time defeats and contravenes the purpose of the insurable interest doctrine by making it possible for NCS to retain at least a portion of the policy benefit. In response, Smith argues that joint and several liability is appropriate because it discourages insurers from issuing improper coverage, and Lloyds has a statutory obligation to pay under Texas Insurance Code article 3.51-6, section 3.
In Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274 (1894), the Texas Supreme Court explained the issue thusly:
When an insurance company has issued a policy upon the life of a person, payable to one who has no insurable interest in the life insured, or when a policy has been assigned to one having no such interest, the insurance company must nevertheless pay the full amount of the policy, if otherwise liable, because it has so contracted; and it is no concern of the insurer as to who gets the proceeds, except to see that it is paid to the proper, parties under its agreement. It is simply required to perform its contract, and the law will dispose of the money according to the rights of the parties. Pacific Mut. Life Insurance Co. v. Williams, 79 Tex. at 637, 15 S.W. 478, and authorities cited.
Id. at 87 Tex. at 292, 28 S.W. at 275 (emphasis added). Thus, the law requires only that the insurance company pay the proceeds of the insurance policy to the designated beneficiary named in the policy, and if the designated beneficiary is not the proper party to receive the proceeds, he holds them in a constructive trust for the proper beneficiary. See DeLeon, 259 F.3d at 350 ("Texas courts have refrained from invalidating a policy for want of an insurable interest to avoid a windfall to insurers at the expense of lawful beneficiaries. Instead, they require insurers to pay the policy proceeds to the beneficiary named in the policy."); see also Tamez, 999 S.W.2d at 15 ("[A] person with no insurable interest will hold the proceeds of a policy as trustee for the benefit of those persons entitled by law to receive it."). *873 Here, the trial court's findings of fact included the unchallenged finding that Lloyd's paid the $250,000 policy proceeds to NCS in satisfaction of NCS's claim for benefits under the policy arising from William Smith's death. As we have previously determined, NCS held the proceeds in a constructive trust for Smith. Accordingly, Lloyd's discharged its responsibilities by paying the insurance proceeds to NCS and therefore is no longer liable for the proceeds.[8]
Our conclusion is further supported by the Tamez court's reasoning that Lloyd's had no contractual relationship with the plaintiffs:
An insurer owes its insured a duty of good faith and fair dealing because of the special relationship arising out of the insurance contract. Aranda v. Ins. Co. of N. Am., 748 S.W.2d 210, 212 (Tex. 1988). Accordingly, only the insured has standing to sue its insurer for breach of the duty of good faith and fair dealing. P.G. Bell Co. v. United States Fidelity and Guaranty Co., 853 S.W.2d 187, 190 (Tex.App.-Corpus Christi 1993, no writ). The supreme court has held that an insurer's duty of good faith and fair dealing does not extend to third-party claimants. Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 279-80 (Tex. 1995).
There is no relationship between Lloyd's and appellants giving rise to the duty of good faith and fair dealing. There was no contractual relationship between appellants and Lloyd's. Although we have held that the rightful beneficiaries of the policy proceeds are appellants, we do not believe this holding extends the duty of good faith and fair dealing to appellants. Accordingly, we uphold the trial court's grant of summary judgment in favor of appellees on this claim.
Id. at 21. Likewise, the trial court here granted Lloyd's summary judgment on Smith's breach of contract claim, finding no contractual relationship between Lloyd's and Smith. Smith does not challenge this ruling, except alternatively in the event we determine that the trial court's declaration and damage award was error. Without a contractual relationship or other duty owed to Smith, joint and several liability cannot be independently *874 imposed upon Lloyd's for the proceeds. For the same reason, Lloyd's is not jointly and severally liable for attorney's fees or interest.[9]
Nevertheless, Smith urges that Texas Insurance Code article 3.51-6, section 3 imposes an independent, statutory basis for liability on Lloyd's to pay the proceeds to the legal heirs of William Smith. Section 3 provides in pertinent part, "all benefits under any group or blanket accident and sickness policy shall be payable to the person insured, or to his designated beneficiary or beneficiaries, or to his estate...." Tex. Ins.Code Ann. art. 3.51-6, § 3 (Vernon Supp.2001). The trial court expressly found that the named beneficiary of the policy was NCS, that NCS submitted a claim for benefits under the policy arising from the death of William Smith, and Lloyd's paid $250,000 to NCS in satisfaction of its claim for benefits under the policy arising from the death of William Smith. Consistent with the reasoning in Cheeves v. Anders, Lloyd's discharged its statutory obligations upon paying NCS. Cheeves, 87 Tex. at 292, 28 S.W. at 275. NCS, having obtained the proceeds in contravention of the statute, held the proceeds in a constructive trust for the lawful beneficiaries. Smith argues elsewhere in her brief and in support of her cross-issue that because NCS was not the lawful beneficiary under the policy in contravention of article 3.51-6 section 3, Smith should be substituted as the designated beneficiary by operation of law. To the extent we understand her argument as one to reform the policy in order to impose direct liability on Lloyd's under article 3.51-6, section 3, we reject this contention.
In DeLeon, the Fifth Circuit considered whether reformation was appropriate to substitute the deceased's estate for NCS as the beneficiary under the policy so that the estate's representative could then sue Lloyd's on the policy. See DeLeon, 259 F.3d at 351. The DeLeon court determined that the Tamez court's reasoning was at odds with a reformed contract, because the Tamez court found that there was not a contractual relationship with the insurer and imposed liability based on a constructive trust theory. Id. (citing Tamez, 999 S.W.2d at 21). After analyzing the provisions of article 3.51-6 in conjunction with the insurable interest doctrine, the DeLeon court concluded that since the constructive trust is already available to plaintiffs in such cases, there was nothing that suggested that the Texas legislature thought plaintiffs needed the additional protection of reformation. See id. at 352. Regarding the practical effect of its holding, the DeLeon court stated the following:
Our conclusion is confirmed by the reality that allowing reformationand a later contract actionin such cases would also create inequitable results. The plaintiff could either (1) sue the employer under the common law, seeking a constructive trust on the proceeds; or (2) sue the insurer on a breach-of-contract theory. The first option presents little difficulty, unlike a suit against the insurer. The insurer could be required to pay the policy proceeds twice: first, to the employer under the policy, and second, to the plaintiff for breach of contract. Requiring Lloyd's to pay twice would be inconsistent with the insurable interest doctrine as applied to the group accident policy. As we have *875 explained, under the insurable interest doctrine, where a constructive trust is applied, the insurer only pays what it owes under the insurance policy. This doctrine does not impose a "penalty" of double payment on the insurer for having entered into a policy whose beneficiary lacks an insurable interest.
Id. at 352-53 (citations omitted) (emphasis added). Finally, the DeLeon court noted that the Texas Insurance Code creates other incentives for insurers to comply, such as the threat of license revocation for those who fail to comply with the provisions of the code. Id. at 353.
We find the DeLeon court's reasoning consistent with Texas law and applicable to the issue of the imposition of joint and several liability on Lloyd's. Accordingly, we sustain Lloyd's first and second issues, and hold that it is not jointly and severally liable for the $250,000 policy proceeds, attorney's fees, or interest.

SMITH'S CROSS-ISSUE
In her sole cross-issue, Smith argues that she is the only lawful beneficiary of the policy at issue, and that the policy should be reformed to substitute her as the named policy beneficiary. Unlike the discussion of reformation in the previous section, which was based on article 3.51-6, section 3 of the Texas Insurance Code, this claim is based on article 21.55, section 6. Smith points out that if she were the beneficiary, the court would have erred if it did not award her interest as damages and attorneys' fees pursuant to Texas Insurance Code article 21.55, section 6. In response, Lloyd's challenges Smith's arguments and asserts that even if she has a claim under article 21.55, she did not present sufficient evidence to support the claim and the attorney's fees found by the trial court.[10]
The purpose of article 21.55 is to obtain prompt payment of claims pursuant to policies of insurance, and its provisions are to be liberally construed to promote this purpose. See Tex. Ins.Code Ann. art. 21.55, § 8 (Vernon Supp.2001). An insurer that fails to comply with the requirements of article 21.55 subjects itself to interest as damages and attorneys' fees:
In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.
Tex. Ins.Code Ann. art. 21.55, § 6 (Vernon Supp.2001). The action initiating the claims process provided for in article 21.55 is the submission of a claim. A "claim" is defined as:
a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that *876 must be paid by the insurer directly to the insured or beneficiary.
Id. § 1(3). Smith contends that she is not named in the policy as a beneficiary only because Lloyd's elected to violate Texas law by naming NCS as the beneficiary, and since she is the only party lawfully entitled to receive benefits from the policy, she must be substituted for NCS as the policy beneficiary. In support of her argument, she relies primarily upon American Nat'l Ins. Co. v. Foster, 133 Tex. 588, 130 S.W.2d 287, 290 (1939), and Stillwagoner, 979 S.W.2d at 355-56, for the proposition that when a policy contains a provision contrary to a statute, Texas courts will conform the insurance contract to comply with the applicable statute.[11]
As in our prior discussion of reformation under article 3.51-6, section 3, we agree with the DeLeon court on this issue. In DeLeon, as here, the plaintiffs sought to hold Lloyd's liable for interest and attorney's fees under article 21.55. See DeLeon, 259 F.3d at 354. The DeLeon court found that, despite the admonition that article 21.55 should be liberally construed, its plain language demonstrated that its provisions were inapplicable because the plaintiffs were not beneficiaries "named in the policy or contract." Id. Further, the applicable statutory deadlines make it clear that the legislature meant the "named" beneficiary and not a lawful, yet unnamed, beneficiary. To hold otherwise would create a windfall for beneficiaries that become known only through the process of litigation. Id.
As this court stated in Daugherty v. American Motorists Ins. Co., 974 S.W.2d 796 (Tex.App.-Houston [14th Dist.] 1998, no pet.), "[t]he purpose of the statutory deadline contained in article 21.55 is to guarantee the prompt payment of claims made pursuant to policies of insurance; not to create a statutory windfall for one party or the other." Id. at 799. We note that in the present case the trial court's conclusions of law provide that, in the event that article 21.55 were applicable, Smith would be entitled to an additional $181,602.73 in interest as damages (as of the date of the court's judgment) and $287,735 in attorney's fees. We find that these amounts far exceed the policy amount of $250,000 originally sued for, and would amount to the sort of statutory windfall rejected in Daugherty and DeLeon.
Thus, as with section 3.51-6, section 3, we decline to find that reformation is available to impose liability on Lloyd's under article 21.55. We therefore overrule Smith's cross-issue. Accordingly, we need not address whether Smith failed to present sufficient evidence in support of her article 21.55 claim.

SUMMARY
We affirm the trial court's judgment awarding Smith the policy proceeds of $250,000 and attorney's fees of $87,500 from NCS. We reverse that portion of the judgment awarding Smith prejudgment interest against NCS based on Texas Finance Code section 302.002 and remand for a determination of the availability of prejudgment interest under the common law and the calculation of any award of prejudgment interest in accordance with Johnson & Higgins of Texas v. Kenneco Energy, Inc., 962 S.W.2d 507 (Tex.1998). We also reverse that portion of the judgment imposing joint and several liability on Lloyd's for the policy proceeds, attorney's *877 fees, and interest. We affirm the trial court's finding that article 21.55 is not applicable to Smith's claims.
BRISTER, C.J., concurring.
SEYMORE, J., dissenting.
SCOTT BRISTER, Chief Justice, concurring.
As the trial judge whose summary judgment was reversed by this Court in Tamez v. Certain Underwriters at Lloyd's, London, 999 S.W.2d 12 (Tex.App.-Houston [14th Dist.] 1998, pet. denied), I confess I remain unconvinced. I agree an employer must show an "insurable interest" in its employees; I disagree that term should be limited to the meaning it had in 1942. Perhaps in 1942, companies never expected to spend a dime when employees died on the job, except for "key men." If so, those days are over. Nevertheless, because Tamez governs this appeal short of en banc consideration, see O'Connor v. First Court of Appeals, 837 S.W.2d 94, 96 (Tex.1992) (stating decision of panel constitutes decision of the whole court unless court chooses to hear case en banc), I reluctantly concur.
Following its bankruptcy filing in 1991, National Convenience Stores, Inc. ("NCS") opted out of the Texas workers compensation system because of high premiums. Instead, NCS obtained liability insurance totaling $75 million to cover employee claims. This coverage included a deductible of $250,000 per claim. Rather than leaving this risk uncovered, NCS obtained a policy payable in that amount upon accidental death in the course of employment of any of its officers or employees.
In Tamez, a panel of this Court punished NCS for its prudence by requiring it to forfeit the entire policy benefit of $250,000 (even though it had already paid more than that to the Tamez family),[1] not to mention all premiums, and pay the plaintiffs attorney's fees and interest as well. The panel found NCS had no insurable interest in the lives of its service-level employees because (1) the Texas Insurance Code was silent on the matter, and (2) it did not fit a 1942 definition of the term. I believe neither reason is persuasive, as set forth below.
The Expansion of Insurable Interests
This is not the first time Texas has brought up the rear in insurance practices. Texas was the last state to limit insurable interests strictly to the boundaries of the common law. See Kennedy v. Laird, 503 S.W.2d 664, 665 (Tex.Civ.App.-Houston [1st Dist.] 1973, no writ). With some resistance from the courts,[2] the Texas Legislature has repeatedly expanded insurable interests far beyond those limits:
 In 1921, the Legislature gave corporations and partnerships an insurable interest *878 in their officers, stockholders, or partners. See Tex. Ins.Code art. 3.49.
 In 1931, the Legislature allowed members of fraternal societies to bestow an insurable interest on any person or business by simply naming them as beneficiary. See id. art. 10.01 et seq.; Castillo v. Canales, 141 Tex. 479, 485-86, 174 S.W.2d 251, 254 (1943).
 In 1953, the Legislature granted the same broad power to all insureds to name any beneficiary they chose. Tex. Ins.Code art. 3.49-1, §§ 1, 2.
 In 1999, the Legislature declared that anyone (person or corporation) had an insurable interest in anyone else by simply obtaining their written consent. Id. art. 3.49-1 § 3.
There is no question the Legislature may expand the scope of insurable interests, or even discard the requirement altogether. Long ago, the United States Supreme Court (in a conflicts case arising because of Texas's restrictive concept of insurable interests) held that each state may choose to define insurable interests according to its own public policies. See Griffin v. McCoach, 313 U.S. 498, 504, 61 S.Ct. 1023, 1026, 85 L.Ed. 1481 (1941). Because the Texas Legislature has the power to declare the state's public policy, its pronouncements on insurable interests are binding on Texas courts. Castillo, 174 S.W.2d at 253.

The Opposite of "Liberal Construction"
With respect to its insurable interest enactments, the Legislature has declared they should be "liberally construed to effectuate [their] purposes," and are "not to be limited or restricted by previous declarations or holdings of the Courts of Texas defining the term insurable interest." Tex. Ins.Code art. 3.49-1, § 5. As the Tamez panel noted, this "intimates that the only limitations on insurable interest are those found in the statute." Tamez, 999 S.W.2d at 17. But that is not at all what the panel did.
The Texas Insurance Code does not require insurable interests generally, or state whether corporations have an insurable interest in the lives of service-level employees. Because of this silence, the Tamez panel held that pre-existing caselaw applied. In other words, unless the statute expressly bestows an insurable interest, that term is limited by previous court decisions. Definitionally, this is the exact opposite of "liberal construction." See Black's Law Dictionary 313 (6th ed.1990) (defining "strict construction" as "construction of a statute or other instrument according to its letter, which recognizes nothing that is not expressed ...").
We can be quite sure this is not what the Legislature intendednot in the 1950s (when it disavowed prior caselaw), and not in the 1990s. Five months after Tamez, the Legislature amended the Insurance Code to declare that an insurable interest is created by written consent of the person whose life is insured. See Tex. Ins.Code art. 3.49-1, § 3. Before 1999, that person also had to be the buyer of the insurance. In applying the same rule when a third-party bought the insurance, the Legislature said it intended "to clarify existing law and practice" and not "to alter or modify" pre-existing law.[3] Act 1999, 76th *879 Leg., R.S., ch. 438, § 2, 1999 Tex. Gen. Laws 2817. This makes two points of legislative intent quite clear: (1) insurable interests extend beyond those expressly listed in the Insurance Code, and (2) when our legislators demanded liberal construction, they really meant it.
Liberal construction requires "expand[ing] the meaning of the statute to meet cases which are clearly within the spirit or reason of the law ..." Black's Law Dictionary 313 (6th ed.1990). By repeated amendments, the Legislature has shown its intent to enforce insurance policies according to their terms, whether or not there is any pecuniary benefit or past history of enforcing similar policies. As our sister court has noted, the two public policies that historically supported insurable interest requirements (namely, temptation to murder the insured and prohibition of wagering contracts) have other safeguards that make their continued validity questionable. See Kennedy v. Laird, 503 S.W.2d 664, 665 (Tex.Civ.App.-Houston [1st Dist.] 1973, no writ) (noting Insurance Code article 21.23 bars recovery by an accomplice in insured's death, and wagers against actuarial tables are likely to be unprofitable absent secret knowledge of insured's health). Instead of requiring specific statutory authorization, we should instead ask whether any statute or prior case specifically bars NCS from asserting an insurable interest. See id. at 666 (awarding death benefits in pension to ex-wife because court could not find a law or public policy that required her to have an insurable interest at time of death).
The Common Law in the Spring of '42
Additionally, by resorting to caselaw to determine the bounds of insurable interests, the Tamez panel inadvertently returns us to the year 1942. It is true that in that year the Texas Supreme Court said that insurable interests "fall into three general classes," one of which was "a reasonable expectation of pecuniary benefit." See Drane v. Jefferson Standard Life Ins. Co., 139 Tex. 101, 104, 161 S.W.2d 1057, 1058-59 (1942). But due to the legislative expansion in insurable interests in the first half of the last century, cases since then almost invariably deal with the statutes. Indeed, between 1942 and 1998 (when Tamez was decided), only four cases mention Drane`s three categories of insurable interests. Of these:
 one was reversed for applying Drane instead of the Insurance Code;[4]
 one has been overruled by statute;[5]
 one referred to Drane but did not apply it,[6] and

*880  one was remanded without analysis for a fuller development of the facts.[7]
Other than the two cases that were overruled, no case ever used Drane to strike down an insurance policy for lack of an insurable interest.
Thus, we know little about how the categories listed in Drane might have developed over the last sixty years, because they have almost never been cited or discussed. By requiring insurable interests to meet the Drane test (unless expressly mentioned in the Insurance Code), Tamez requires us to apply the common law as it was frozen in 1942.
But even that law was too narrowly applied. The Tamez panel expressed concern that NCS might profit from the death of one of its employees, though it had not in that case. See 999 S.W.2d at 19. But that is always possible when the matter insured is a life. Unlike a house, a car, or a boat, the economic value of a person cannot be precisely measured by reference to a market value. "Key man" life insurance policies are not void merely because, in some cases, the policy may prove more profitable than the insured.
In Drane itself, the court upheld Dorothy Drane's designation of her godson (to whom she was not otherwise related) as beneficiary and awarded him $10,510.00 in benefits (a huge sum in the 1930s), finding he had a pecuniary interest in her life because she had provided him with "perhaps more clothes than the average boy has," allowed him to charge items to her account at a drug store, occasionally drove him places, and was taking him "a radio, a cap and an apple pie" when she died in an auto accident. 161 S.W.2d at 1059. There is simply no way to read Texas common laweven in 1942to preclude an insurable interest because the policy benefits might exceed the beneficiary's pecuniary loss.
A Fair Extension of the Common Law
Times (not to mention the law) have changed since 1942. Convenience stores are far more ubiquitous now. So is crime. So are employee lawsuits. Today, an owner of hundreds of convenience stores can reasonably anticipate that one of its employees will be killed, and that the employees' relatives will then sue. Without a doubt, such an employer can reasonably expect a pecuniary loss connected with an employee's death, and thus ought to have an insurable interest.
Nothing in Drane suggests the categories listed there were intended to be exhaustive, or to be inflexibly applied. But that is what the Tamez panel did. First, the panel noted that Drane required a "pecuniary benefit or advantage," while NCS raised only the risk of "a substantial pecuniary loss." Tamez, 999 S.W.2d at 18. But financial loss upon death is the flip side of financial gain upon continued life. Modern authorities (other than Tamez) recognize this equivalence. See 3 Couch on Insurance § 43:13 (3rd ed.1995) (stating that to show an insurable interest, an employer "must have a reasonable expectation *881 of substantial pecuniary gain through the continued life of the employee, or of a substantial pecuniary loss in case of his or her death") (emphasis added); Beard v. American Agency Life Ins. Co., 314 Md. 235, 550 A.2d 677, 682 (1988).
Second, the panel ignored cases similar to Tamez. In Amalgamated Labor Life Ins. Co. v. Rowe, 421 S.W.2d 364 (Ky. 1967), a Kentucky court held that a non-subscribing employer had an insurable interest in the lives of its employees because of potential responsibility if they were injured. The Tamez panel was unpersuaded by the case because the Kentucky Legislature changed it later by statute. But a state's legislature can always expand or limit insurable interests according to its current policies; this does not indicate why, without such an indication from the Texas Legislature, the panel felt it had to do so.
Closer to home, in North River Ins. Co., New York, N.Y. v. Fisher, a homeowner obtained an insurance policy on the life of an employee hired to cut his trees, naming himself as beneficiary but intending to pay the proceeds to the employee's wife in case the employee was injured or killed (as he was). 481 S.W.2d 443 (Tex.Civ.App.-Amarillo 1972, writ ref'd n.r.e.). Although the homeowner did not assert a pecuniary interest, the court ordered the policy proceeds paid to him because he intended (as did NCS) to pass the benefits on to those who did.[8]
The lesson of Tamez is that insurable interests do not exist unless a statute or prior case specifically recognizes them.[9] This approach is certain to keep Texas in the rearguard of legal developments, as our common law will never change.

Why Worry?
I hesitate to write separately; but I fear the Tamez panel may not have realized it was creating a mass tort. Shortly before Tamez, the plaintiffs' attorney succeeded in a similar case for a different client in Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354 (Tex.App.-Tyler 1998, no pet.). Because he sued only the insurer and not the employer in DeLeon v. Lloyd's London, Certain Underwriters, 259 F.3d 344 (5th Cir.2001), he was less successful. Undeterred, he has gone on to bigger things. See Mayo v. Hartford Life Ins. Co., 193 F.Supp.2d 927 (S.D.Tex. 2002) (considering Tamez in an uncertified class action for benefits of policies covering employees of Wal-Mart Stores and Camelot Music). While I hesitate to discourage such entrepreneurial zeal, I wonder if the panel's desire to reach an equitable result in Tamez has lead to overreaching.
Events in the short time since Tamez was issued in 1998 suggest we should reconsider it. Do we really mean to say employers of bond traders, pilots, and flight attendants have no insurable interest in the lives of their employees, because they are not "key men"? Should we punish companies for insuring against potential losses, even though unprotected risks may lead to bankruptcy, unemployment, and plummeting stock prices that ruin stockholders and employee pensions alike?
Sixty years before Tamez, the Supreme Court of Mississippi held that a non-subscribing *882 employer had an insurable interest in the lives of his service-level employees. I cannot sum up the argument any better:
Under conditions and practices which appertained in former days, the question [whether an employer has an insurable interest in an ordinary employee] would perhaps have been answered by most of the courts in the negative. But in this day and under modern and more enlightened practices, employers do not throw injured employees to the dogs when the employer has no liability for the injury. Employers do not first stop to inquire whether they are legally liable for the injury, but, at their own expense, or largely so, they take the injured employee to a hospital, or otherwise furnish all necessary and suitable care and attention, for such reasonable time as is required, and, if death results, a decent burial is providedall this although the employer is not legally liable at all. This is sufficient as a foundation for an insurable interest ...
Neely v. Pigford, 181 Miss. 306, 178 So. 913, 913 (1938).
I fear the Mississippi court of 1938 was more modern and enlightened than we.
CHARLES W. SEYMORE, Justice, dissenting.
I respectfully dissent for two major reasons: (1) the policy in question is not life or accident insurance prescribed under the Insurance Code; and (2) alternatively, NCS had an insurable interest in William Smith's life through its Job Injury Benefit Program.
The Texas worker's compensation system experienced a complete meltdown during the later 1980's. Many businesses exited the state because they could no longer afford to pay extremely high premiums for worker's compensation coverage. At all times material to this action, NCS was in bankruptcy. It elected to become a nonsubscriber (employer rejecting statutory worker's compensation coverage). According to testimony, NCS created a Job Injury Benefit Program to compensate employees who sustain injury or death on the job. NCS contends it was necessary to insure its obligations under the program because the trustee in bankruptcy could not or probably would not timely allocate sums of money to pay for expenses resulting from employee injury or death. During this tumultuous period,[1] domestic insurance carriers did not provide employer's indemnity or liability coverage as an alternative to coverage prescribed by the Worker's Compensation Act. Also, there was no prescribed language for a policy which would provide reimbursement to a nonsubscriber for payments in connection with injury or death of an employee.
Early in the 1990's, a few Lloyd's syndicates offered insurance alternatives for non-subscribers. The insurance contract in question is titled "Lloyd's Occupational Accidental Death Insurance." According to testimony, it was issued as a surplus lines policy. The insuring language does not conform to the specified language for group coverage defined in Texas Insurance Code, Article 3.51-6, Section 1(a)(1) or blanket policy defined in Article 3.51-6, Section 3. See Tex. Ins.Code Ann. Art. 3.51-6, §§ 1(a)(1), 3 (Vernon 1981 & Supp. 2002). In Tamez v. Certain Underwriters at Lloyd's, London, a different panel on this court reviewed the same policy and opined that it provides group accident insurance prescribed under Article 3.51-6. *883 999 S.W.2d 12, 20 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). The Tamez panel grafted the provisions of article 3.51-6 Section 1(a)(1) onto the policy and concluded that "group insurance must be for the benefit of persons other than the employer." Id. at 20. The majority follows the previous panel's decision in Tamez and implicitly rewrites the policy by changing the designated assured/beneficiary from NCS to William Smith and/or his survivors. The rationale for rewriting the policy was stated in Tamez as follows: "NCS recovered benefits from this policy in violation of the Insurance Code...." Id. at 20-21. This conclusion, without explanation, completely disregards NCS's assertion and testimony that the policy was written as a manuscript (non-prescribed language) through Lloyd's, an eligible surplus lines carrier. Accordingly, I would not rewrite the policy to achieve the result fostered by the majority.
During all times material to this case, NCS was a nonsubscriber, operating under the direction of a trustee in bankruptcy. In the event of employee injury or death, NCS would be required to ask the trustee for an allocation of corporate assets against the interest of other competing creditors. It would be reasonable to conclude that NCS could not have continued in business without creating a Job Injury Benefit Program and purchasing insurance to cover obligations and risks associated with being a nonsubscriber. See Kroger Co. v. Keng, 23 S.W.3d 347, 350-52 (Tex. 2000). It is apparent that our Supreme Court did not contemplate this type of relationship between employer and employee when it outlined the three general classes of people who have an insurable interest in the life of another.[2]Drane v. Jefferson Standard Life Ins. Co., 139 Tex. 101, 161 S.W.2d 1057, 1058-59 (1942). Certainly, there should be no disagreement that employer-employee relations have changed in the last sixty years. Our legislature acknowledged and authorized insuring agreements similar to the subject Lloyd's policy subsequent to the events made the basis of this appeal. See Tex. Ins.Code Ann., Article 3.49-1. The majority follows the Tamez panel and essentially ignores NCS's payment of benefits under the Job Injury Benefit Program. Considering the unique facts of this case, I do not believe this court should be constrained by the Supreme Court's sixty year old Drane opinion. It is my considered opinion that NCS had an insurable interest in William Smith's life through its Job Injury Benefits Program. The majority refuses to recognize NCS's precarious existence and the practical solution formulated to handle risks of loss. Imputation of vice in this insurance arrangement makes for great rhetoric by advocates; however, it is most difficult for any reasonable person to conclude that bankrupt NCS intended to make a profit by wagering on the lives of its employees. I would not approve imposition of a constructive trust to disgorge NCS as the assured/beneficiary of the subject insurance policy. I see little equity in awarding policy proceeds to William Smith's survivors long after appellee, Angela Smith, agreed to accept $300,000 plus in monthly (structured) benefits for release of NCS's potential contract and tort liability in connection with William Smith's untimely death.
*884 I concur with the majority in reversing that portion of the trial court's judgment imposing joint and several liability for policy proceeds, attorney's fees and interest against Lloyd's. For all the reasons stated above, I respectfully register my dissent to that portion of the majority opinion affirming the trial court's imposition of a constructive trust and award of policy proceeds and attorneys fees to Angela Smith.
NOTES
[1] For convenience, the appellants aligned with Lloyd's will be referenced collectively as "Lloyd's" unless the context indicates otherwise.
[2] Because of the procedural posture of the case, the Tamez court did not have an opportunity to address attorney's fees or prejudgment interest.
[3] Subsequently, the Fifth Circuit extensively cited the Tamez opinion in DeLeon v. Lloyd's London, Certain Underwriters, 259 F.3d 344 (5th Cir.2001), another case involving a similar factual background, the same insurance policy, and defendants NCS and Lloyds. After Tamez was decided, the trial court granted summary judgment in DeLeon in favor of Lloyd's on the plaintiff's breach of contract claim and the plaintiff appealed. Unlike the present case, NCS was not a party to that appeal because the plaintiff had previously dropped her claims against it.
[4] We recognize that, in DeLeon v. Lloyd's London, Certain Underwriters, the Fifth Circuit found that collateral estoppel based on Tamez barred relitigation of the issues, but the DeLeon opinion is distinguishable on this point because it does not reflect that the issue of waiver was raised or litigated. DeLeon is discussed in greater detail in regard to the issues raised by Lloyd's and Smith.
[5] Effective September 1, 1999, article 3.49-1 was amended to include the following: "Any person of legal age may consent in writing to the purchase of or the application for an individual or group insurance policy or policies issued by any legal reserve or mutual assessment life insurance company by a third party or parties and in such written document consent to or designate any person, persons, partnership, association, corporation or other legal entity, or any combination thereof, as the absolute or partial owner or owners or beneficiary, or any combination thereof, of any policy or policies issued in connection with such consent or designation; and with respect to any such policy or policies any such owner or beneficiary shall at all times thereafter have an insurable interest in the life of such person, except as provided in Section 4 of this Act [those in the business of burying the dead]." Tex. Ins.Code Ann. art. 3.49-1, § 3 (Vernon Supp.2001).
[6] Accordingly, we reject NCS's contention that the Tamez court misconstrued the meaning of the term "insured person" as used in article 3.51-6 by determining that it refers to the officers and employees of NCS rather than the corporate entity. Tamez, 999 S.W.2d at 20. We also reject Lloyd's assertion that Smith lacks standing to bring her claims. See id. at 14-16; Stillwagoner, 979 S.W.2d at 359-60.
[7] Article 5069-1.03 provided: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable." Act of May 24, 1979, 66th Leg., R.S., ch. 707, § 1, 1979 Tex. Gen. Laws 1718, 1718, repealed by Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3093, 3601-03 (current version at Tex. Fin.Code Ann. § 302.002 (Vernon 2002)).
[8] Smith cites several authorities that she contends hold that an insurer can be directly liable to the lawful beneficiary for life insurance proceeds paid to one with no insurable interest. However, we find these factually distinguishable. Further, three of the cases Smith cites involved claims against insurers when the insurance company paid a benefit with knowledge of an adverse claim to the proceeds. See McDonald v. McDonald, 632 S.W.2d 636, 640 (Tex.App.-Dallas 1982, writ ref'd n.r.e.); Sink v. Waco Mutual Life & Accident Ass'n, 49 S.W.2d 888, 889 (Tex.Civ. App.-Waco 1932, writ ref'd); Manhattan Life Ins. Co. v. Cohen, 139 S.W. 51, 56-57 (Tex. Civ.App.-San Antonio 1911, writ ref'd). That did not happen here. The trial court found that Lloyd's paid NCS the $250,000 on or about March 11, 1992, and Angela Smith and Brandon Hendrix were not declared the "lawful heirs" of William Smith until January 25, 2000, when the trial court signed its findings of fact and conclusions of law. Smith also relies on National Life & Accident Ins. Co. v. French, 144 S.W.2d 653 (Tex.Civ.App.-Amarillo 1940, no writ), but that case merely stands for the well-settled proposition that an insurance company cannot avoid paying out the proceeds of a life insurance policy to a lawful beneficiary merely because the policy was issued or assigned to one lacking an insurable interest. Id. at 655; see also Cheeves v. Anders, 87 Tex. at 293, 28 S.W. at 276 ("[The insurance company], having agreed to pay the money upon the death of a named person, ought not to be permitted to avoid liability upon its contract upon the ground that it has made an unlawful agreement, when that contract can be enforced in favor of a person who is in no wise concerned in the unlawful part of the transaction.").
[9] In conjunction with its argument against the imposition of joint and several liability for attorney's fees and interest, Lloyd's raised the additional argument that Smith's claim under the Declaratory Judgments Act is improper. We have already rejected these arguments in our discussion of NCS's liability, as we found that Smith's claim was properly one for declaratory relief.
[10] Lloyd's also raises the argument that Smith has waived her argument for reformation because she never pleaded it. This argument appears to have little merit. As Smith points out, her first motion for summary judgment argued that the Lloyd's policy must be rewritten to conform to insurance regulations, and Lloyd's itself moved for summary judgment on that issue. Further, Lloyd's never objected that Smith's pleadings did not seek contractual reformation. Smith's Sixth Amended Petition does not plead for reformation, but asserts that the plaintiffs are "claimants" under article 21.55. Lloyd's responsive answer includes special exceptions, but none objecting to reformation.
[11] We note that the French and Stillwagoner cases did not discuss reformation of an insurance contract, and, in addition, Stillwagoner did not address in any fashion direct liability on the part of the insurer.
[1] See Tamez, 999 S.W.2d at 22. Indeed, NCS reportedly paid $4.1 million to some of the Tamez family members. See Robert Elder, Jr., The Death Deductible; Stop N Go Workers' Deaths Help Pay for Company's Defenses, The Texas Lawyer, April 15, 1996, p. 1.
[2] In McBride v. Clayton, 140 Tex. 71, 76, 166 S.W.2d 125, 128 (1942), the Court noted a 1921 enactment giving corporations an insurable interest in "the life of any officer or stockholder." Nevertheless, the Court refused to enforce a corporation's policy on the life of its president, because at the time of his death the business had been shut down, thus making the policy more valuable than his services. 166 S.W.2d at 130. Even though the statute placed no limitation on "insurable interests" granted to corporations, the Court assumed the Legislature intended to limit the term in accordance with prior caselaw. Id. at 128. Perhaps this is why the Legislature was more explicit about its intent to repudiate prior caselaw concerning insurable interests in 1953. See Tex. Ins.Code art. 3.49-1, § 5.
[3] The Legislature provided for prospective application of the amendment to policies issued or renewed after January 1, 2000. Act 1999, 76th Leg., R.S., ch. 438, § 3, 1999 Tex. Gen. Laws 2817. But as a statement of the public policy of Texas, it guides judicial interpretation of earlier policies as well. See McCain v. Yost, 155 Tex. 174, 177, 284 S.W.2d 898, 900 (Tex.1955) (applying 1953 amendment, even though it was prospective only, to insurance policy issued in 1946 because it expressed state's public policy).
[4] Allen v. Brewster, 172 S.W.2d 192 (Tex.Civ. App.-Dallas 1943), rev'd, 142 Tex. 127, 176 S.W.2d 311 (1944).
[5] In Biggs v. Washington Nat'l. Ins. Co., the court held a beneficiary named by the insured as his "wife"although he was actually married to someone elsehad no insurable interest because any pecuniary benefits she expected from their "meretricious and illicit" relationship were unlawful. 275 S.W.2d 566, 569 (Tex.Civ.App.-Waco 1955, no writ). The Insurance Code now overrules this holding. See Tex. Ins.Code art. 3.49-1, § 1.
[6] In Empire Life Ins. Co. of America v. Moody, 584 S.W.2d 855 (Tex.1979), the Court indicated an insured's assignment of his life interest in trust income of over $4 million gave the assignee an insurable interest. 584 S.W.2d at 859. The panel in Tamez pointed to Empire Life as proof that "courts have continued to apply prior case law regarding insurable interest" after the enactment of Insurance Code section 3.49-1. Tamez at 18. But as the Tamez panel elsewhere noted, Empire Life was "not addressing the issue of insurable interest" and merely "referred" to Drane`s definitions. Id. at 17, 18, 161 S.W.2d 1057. The actual holding in Empire Life was that the claimant had an insurable interest pursuant to section 3.49-1. See Empire Life, 584 S.W.2d at 860.
[7] United Benefit Life Ins. Co. of Omaha v. Boyd, 453 S.W.2d 332, 334 (Tex.Civ.App.-El Paso 1970), writ ref'd n.r.e., 457 S.W.2d 893 (Tex.1970).

The court did not rely on pecuniary interest in American Cas. & Life Co. v. Chambers, 172 S.W.2d 122 (Tex.Civ.App.-Fort Worth 1943, writ dism'd w.o.j.), finding an insurable interest because of a relationship that "did not arise under the fact of cold and business-like dealings; there was something far more beautiful and abiding in the motives that brought this old man into the Chambers home, in his declining years." Id. at 124. The court said it would not "under such heart-appealing and human circumstances, look upon the status of these persons as that of mere debtor and creditor." Id.
[8] There is no analysis of the direct pecuniary interest of the beneficiary because the homeowner stipulated that he had no insurable interest. Fisher, 481 S.W.2d at 445.
[9] For example, the panel points out that "most cases" have found an insurable interest between employer and employee only if "they are crucial to the operation of the business." Tamez, 999 S.W.2d at 18. Thus, because the pecuniary interest asserted by NCS is not the same as those approved in the past, the panel presumes it is invalid.
[1] Chief Justice Phil Hardberger, Texas Worker's Compensation: A Ten-Year Survey Strengths, Weaknesses and Recommendations, 32 St. Mary's L.J. 1, 1-3 (2000).
[2] Three general classes of those who may have an insurable interest in the life of another include (1) one so closely related by blood or affinity that he wants the other to continue to live, irrespective of monetary considerations; (2) a creditor; and (3) one having a reasonable expectation of pecuniary benefit or advantage from the continued life of another. Drane, 161 S.W.2d. at 1059.